Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Bonita Crossley *v.* L. L. Stearns & Sons and Pennsylvania Manufacturers' Association Insurance Company, Insurance Carrier, Appellants.

Argued June 6, 1975, before Judges Wilkinson, Jr., Mencer, and Rogers, sitting as a panel of three.

*William S. Kieser,* with him *Ertel & Kieser,* for appellants.

*Charles F. Greevy, III*, with him *Greevy & Mitchell*, and *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE WILKINSON, July 14, 1975:

Claimant-appellee was employed by employer-appellant as a sales clerk in employer's store, a position she had held for several years. On June 20, 1972, claimant was injured outside the store. The side of employer's store with which we are concerned faces south on West Third Street in Williamsport. The store fronts on the entire block of West Third bounded on the west by Laurel Street and on the east by Pine Street. A sidewalk, normally 11½ feet wide, abuts the store for the entire length along West Third. At the western end of the sidewalk, starting at the corner of West Third and Laurel and running easterly for 28 feet, is a three-foot wide extension or addition to the sidewalk, making a total width of 14½ feet.

Centered in this 3' x 28' extension is a planter approximately 3' x 16' which is set off by a chain and post fence or guard. The remainder of the extension, at both ends of the planter or garden area, is paved as a sidewalk and is the same level as the remainder of the sidewalk. In the sidewalk area of the eastern end of the extension is a 17-inch high metal post.

On June 20, 1972, claimant finished work at 5:00 p.m. and punched out at 5:02 p.m. She left the store immediately, in the company of several fellow sales clerks, through what is called the "side door." This door exits onto the sidewalk on West Third Street and is located in the center of the block. It is the door which claimant, as an employee, was instructed by the employer to use on leaving the store. Claimant turned right and proceeded along the sidewalk in a westerly direction. She was heading toward her car which was parked in a public lot about two blocks south of the store. The employer did not provide parking for employees nor did it give instruc-

tions as to where employees should park. As she neared the corner of West Third and Laurel, she, and the group she was with, started to cross West Third Street. In so doing, claimant walked onto the sidewalk portion on the eastern end of the extension, struck her knee on the 17-inch high metal post, fell onto the curb and street area and broke her kneecap. She was disabled for 28 weeks. Claimant's claim petition was contested by the employer and on March 27, 1974, the referee awarded compensation to claimant. The Workmen's Compensation Appeal Board affirmed on November 7, 1974, and the employer has appealed to us. We affirm.

The sole question before us is whether claimant-appellee was injured "in the course of [her] employment" within the meaning of Section 301(c(1) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P L. 736, *as amended,* 77 P.S. §411 (Supp. 1974-1975). Section 301(c)(1) provides:

"The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employé, regardless of his previous physical condition, *arising in the course of his employment* and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. *The term 'injury arising in the course of his employment,' as used in this article,* shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the em-

ployer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."* (Emphasis added.)

It is the emphasized portion of Section 301(c)(1) with which we are concerned.

In order for claimant to establish her right to compensation, the statute requires several things. She must show (in this case) that the injury was (1) "caused by the condition of the premises," (2) sustained upon "premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on," and (3) that her presence on those premises was "required by the nature of [her] employment."[1]

That the injuries were "caused by the condition of the premises" is not here contested. The next question is whether the metal post and the extension are "premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on." We hold that the metal post and the extension are such premises. The evidence shows that the extension was built and maintained by the employer as a part of a city beautification campaign. The metal post, which was installed by the employer, painted red by the employer after the accident and later removed by the employer, served the purpose of protecting the plants in the planter portion of the extension from damage by

---

1. *See generally,* 1 A. Barbieri, Pennsylvania Workmen's Compensation §4.10, et seq. (1975).

employer's trucks which used this area as a loading area, the only freight entrance and freight elevator for employer's store being located at this same corner. We have no difficulty in holding that the claimant was injured on the employer's premises. *Meucci v. Gallatin Coal Company*, 279 Pa. 184, 123 A. 766 (1924) ; *Ingersoll-Rand Company v. Workmen's Compensation Appeal Board*, 12 Pa. Commonwealth Ct. 502, 316 A.2d 673 (1974) ; *Fetzer v. Michrina*, 8 Pa. Commonwealth Ct. 273, 301 A.2d 924 (1973) ; *Hesselman v. Somerset Community Hospital*, 203 Pa. Superior Ct. 313, 201 A.2d 302 (1964) ; *Feney v. N. Snellenburg & Company*, 103 Pa. Superior Ct. 284, 157 A. 379 (1931).

The final question is whether claimant's presence on the employer's premises was required by the nature of her employment. We hold that it was. *See Feeney, supra.* In order to come within this last provision of Section 301(c)(1), claimant is *not* required to meet the more difficult burden of showing that she was "actually engaged in the furtherance of the business or affairs of the employer" as she would be required to do if she were injured *off* the premises of the employer. This is clear from the language of Section 301(c)(1) itself, which allows even those employees who were "not so engaged" to recover if they meet other, less stringent, requirements, *i.e.*, the three requirements enumerated above.

Our conclusion that claimant meets this last requirement is based on our interpretation of the purpose of that phrase. Generally, an employee, whether on or off the employer's premises, when actually engaged in the furtherance of the employer's business, *is* covered. Likewise, an employee is *not* covered when *off* the employer's premises and *not* engaged in the furtherance of the employer's business. What about the situation when the employee is on the employer's premises but not actually engaged in the furtherance of the business or affairs of the employer? For example, *W* is a waiter in a restaurant from 8:00 a.m. to 5:00 p.m. daily. He has a lunch period

from 11:00-11:30 when he may eat where he chooses, but if he eats in this restaurant, he must pay for his lunch at the regular rate. *W* comes to the restaurant for lunch on his day off, as any member of the public would do. If he is injured due to the condition of the employer's premises on his work day, he is covered, *Henry v. Lit Brothers, Inc.,* 193 Pa. Superior Ct. 543, 165 A.2d 406 (1960), but if on his day off, he is not. On his day off, *W*'s presence on the premises was not required by the nature of his employment. *Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 297 A.2d 520 (1972).

In the instant case, claimant was injured just two or three minutes after she punched out for the day. She left the store through the door that her employer required her to use, she proceeded along the sidewalk abutting the store and stepped onto the extension preparing to cross the street as she had often done before. At the time and place of her injury, she was where she would be expected to be by the nature of her employment. Although it may be true, as the employer argues, that after the employee leaves the store, the employer has no more control over the employee, it was the employer's requirement of leaving the store and the requirement of which door to use in leaving, which necessarily required the employee's presence outside the building on the sidewalk controlled by the employer. Granted that the employer might not be able to dictate to the employee which way to turn on a public sidewalk after working hours, but when the employee is placed outside the building by the requirements of her employment and is immediately thereafter injured while on the employer's premises and under circumstances not "wholly foreign to the claimant's employment,"[2] the employer cannot escape liability by claiming it has no control over the employee.

---

2. *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 188, 305 A.2d 757, 764 (1973).

For the above reasons, we agree with the referee and the Board that claimant was injured in the course of her employment and, accordingly, we enter the following:

ORDER

Now, July 14, 1975, the order of the Workmen's Compensation Appeal Board, dated November 7, 1974, is affirmed and the defendant and/or insurance carrier is directed to pay to the claimant compensation at the rate of $47.00 per week from June 21, 1972, to January 2, 1973, inclusive. Compensation payments are terminated beginning January 3, 1973. Deferred payments of compensation shall bear interest at the rate of 10% per annum from the due date thereof. The defendant and/or insurance carrier is also directed to pay the sum of $121.38 to The Williamsport Hospital, 777 Rural Avenue, Williamsport, Pennsylvania.