Meredith M. Naugle, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Penn Machine Company, Respondents.

Argued September 17, 1981, before President Judge CRUMLISH and Judges CRAIG and MACPHAIL, sitting as a panel of three.

*Stephen L. Dugas, Glass, Glass & Dugas,* for petitioner.

*Joseph F. Grochmal, Fried, Kane, Walters & Zuschlag,* for respondents.

OPINION BY JUDGE CRAIG, October 7, 1981:

In this workmen's compensation appeal, the claimant[1] questions a denial of compensation by the Workmen's Compensation Appeal Board, affirming the referee's decision that the claimant was not injured in the course of his employment.[2]

---

[1] Meredith M. Naugle.

[2] Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411 (1), details two categories of compensable injuries arising in the course of employment. The first is an injury sustained by an employee while engaged in the business or affairs of the employer, whether or not the employee is on the employer's premises. The second is an injury sustained by an employee on the employer's premises caused by the condition of the premises or by the operation of the employer's business or affairs thereon, provided that the employee's presence is required thereon by the nature of his em-

An employee of the Penn Machine Company (employer), the claimant was injured on February 23, 1979 when he slipped on ice, fell and broke his hip while walking to the plant after parking his car. The lot where the claimant was injured, located across a set of railroad tracks from the employer's property, was owned by U.S. Steel; the claimant and several other Penn Machine employees regularly preferred to park there, rather than to try finding a space in the lot provided by the employer or in the metered on-street parking near the plant.

The employer was aware of employee use of the lot, having posted a notice detailing complaints from U.S. Steel and the municipal authorities as to the employees' haphazard manner of parking.[3]

---

ployment. Whether the claimant was in the course of his employment at the time of his injury is a question of law based on the findings of fact. *Artrip v. Workmen's Compensation Appeal Board*, 54 Pa. Commonwealth Ct. 502, 421 A.2d 1254 (1980).

[3] The notice, posted January 31, 1979, stated:

THE FERNDALE POLICE AND BOROUGH OFFICIALS ARE COMPLAINING ABOUT PENN MACHINE COMPANY EMPLOYEES PARKING ACROSS THE RAILROAD TRACKS IN A MANNER WHICH PREVENTS THE BOROUGH SALT TRUCK AND HIGHLIFT TO ENTER THIS AREA TO PICK UP SALT.

EACH OF YOU HAVE BEEN NOTIFIED BEFORE ABOUT PARKING YOUR VEHICLES IN AN ORDERLY MANNER TO ALLOW U.S. STEEL TRUCKS AND OTHER BOROUGH VEHICLES TO ENTER AND LEAVE THIS PREMISE.

NATIONAL BENDING COMPANY AND U.S. STEEL HAVE CAUTIONED THIS OFFICE SEVERAL TIMES ABOUT THE ERRATIC PARKING OF PENN MACHINE COMPANY EMPLOYEES' VEHICLES ON THEIR PRIVATE PROPERTY AND HAVE THREATENED TO POST 'NO TRESPASSING' SIGNS OR TO ERECT A FENCE ACROSS THE PROPERTY TO PREVENT ANYONE FROM PARKING IN THIS AREA.

The employer presented testimony concerning the general availability of space in the employer's lot. The referee concluded that the claimant "was not injured by reason of the condition of or on the premises of the employer within the meaning of [the Act]." The board affirmed, holding the injury to be noncompensable because it occurred on property which the employer neither owned, operated nor controlled.

Because the claimant was not actually working at the time of his fall, his eligibility depends upon whether or not the incident occurred on the employer's premises.[4] *Schofield v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 282, 395 A.2d 328 (1978). That requirement was interpreted by the Supreme Court in *Epler v. North American Rockwell Corp.,* 482 Pa. 391, 393 A.2d 1163 (1978) as embracing property that is so connected to the employer's business as to form a component or integral part of it, notwithstanding legal ownership by another party.

In *Epler,* the employee's widow was awarded compensation when her husband was struck by a car while

---

I AM ASKING EACH ONE OF YOU WHO PARK IN THIS AREA TO PARK IN AN ORDERLY FASHION TO PERMIT OTHER VEHICLES TO ENTER AND LEAVE THIS PROPERTY WITHOUT PROBLEMS.

*THERE IS ADDITIONAL PARKING AREA BETWEEN THE HYDRAULIC SHOP AND THE RAILROAD TRACKS IF YOU SO DESIRE.*

*ONLY YOUR FULL COOPERATION ON THE ABOVE MATTER CAN PREVENT THE LOSS OF YOUR PARKING PRIVILEGES ACROSS THE RAILROAD TRACKS.* (Emphasis in original.)

The notice was submitted as an exhibit by the employer.

[4] Section 301(c)(1), 77 P.S. §411(1) describes as the employer's premises "premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on. . . ."

walking to an employer-provided parking lot after work, even though the accident occurred on a public road bisecting the locations. The court noted that the critical factor was not the existence or absence of the employer's ownership or control over the area, but rather the fact that the employer "caused the [parking] area to be used by its employees in performance of their assigned tasks."[5] 482 Pa. at 397, 393 A.2d at 1167.

That critical element is absent here. Although the employer was aware that some of its employees parked in the U.S. Steel lot, it did not require them to use that lot either directly or through failure to provide company-owned parking facilities.

The employer's posted notice, set forth in a footnote above, essentially constituted a communication relaying the complaints of others concerning the exercise of parking privileges those others had extended, rather than an assertion or assumption by the employer adopting the U.S. Steel lot as part of its own business complex.

The relationship between the employee's use of the lot and the employer's business operations is too tenuous to warrant characterization of the area as an integral part of the employer's premises.[6]

---

[5] The municipality in which the employer's plant was located had banned on-street parking in the vicinity of the plant and required the employer to provide off-street parking. The employer then established a parking priority allowing managerial and supervisory personnel to park at a lot closer to the plant while relegating other classes of employees, including Epler, to a non-contiguous lot located across the public road.

[6] A survey of recent cases reveals that Pennsylvania courts have held that areas essentially used as a means of ingress or egress to the entrance or exit of an employee's place of employment, even though accessible to public use, are integrally related to the employer's business. *See, e.g., Interstate United Corp. v. Workmen's men's Compensation Appeal Board,*     Pa. Commonwealth Ct.     ,

Consequently, we cannot hold as a matter of law that the claimant's injury falls within the scope of Section 301(c)(1), as an injury arising in the course of his employment.[7]

We therefore affirm.

### ORDER

AND Now, October 7, 1981, the order of the Workmen's Compensation Appeal Board No. A-77804, dated October 23, 1980, affirming a referee's denial of compensation to claimant, is hereby affirmed.

---

424 A.2d 1015 (1981), *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 55 Pa. Commonwealth Ct. 465, 423 A.2d 792 (1980), *Epler, Schofield.*

[7] For a comprehensive review of cases dealing with the issue of parking lots as part of the employer's premises, *see* footnote 2 of Justice POMEROY's concurring opinion in *Epler.*