439 A.2d 1162

**Mary B. TATRAI, formerly Mary B. Fleming, Appellant,**

v.

**PRESBYTERIAN UNIVERSITY HOSPITAL.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1981.

Decided Jan. 29, 1982.

248

Wendell G. Freeland, Craig A. McClean, Nicholas R. Stone, Freeland & Kronz, Pittsburgh, for appellant.

Robert A. Nedwick, Spencer D. Hirshberg, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

NIX, Justice.

Appellant was employed as an operating room technician by appellee, Presbyterian University Hospital. On May 27, 1975 during her working hours, Ms. Tatrai became ill and was directed by her supervisor to go to the emergency room of the hospital to seek medical attention. After reporting to the emergency room, she was placed on an x-ray table. While this table was being rotated to an upright position, the foot stand became loose and/or broke away causing Ms. Tatrai to fall from the table and to be injured. Appellant commenced this action in trespass and assumpsit against Presbyterian Hospital alleging negligence and a breach of warranty of the safety of appellee's equipment and services. The Court of Common Pleas entered a verdict for the hospital finding that the Workmen's Compensation Act (Act), Act of June 2, 1915, as amended, December 5, 1974, P.L. 782, No. 263, 77 P.S. § 481 provides an exclusive remedy and therefore bars appellant's action. The lower court found that the medical treatment given to appellant was provided to her as an employee in the normal course of her employment, and further held that her presence in the emergency department was required. The Superior Court affirmed the action of the Court of Common Pleas, 284 Pa.Super. 300, 425 A.2d 823. The issue presented in this appeal is whether Presbyterian University Hospital, appellee, may effectively defend a common law action for alleged negligence causing injury to one of its employees by virtue of the exclusivity provision of Section 303 of the Act. 77 P.S. § 481(a) (Supp. 1981–82). For the following reasons we

disagree with the Superior Court and hold that appellant herein was entitled to institute suit against appellee.

Section 303(a) provides that in return for the benefit of strict liability the employee receives under the Act, the employee surrenders his or her rights to any form of compensation for any injury occurring in the course of employment other than that provided under the terms of the Act.[1] Here there is no question that appellee was an employee at the time of the alleged injury. The disputed question is whether the injury occurred in the course of the employment. The employer's claimed immunity to the negligence action instituted by appellant is dependent upon a finding that this injury occurred during the course of the appellant's employment.

Section 301(c)(1) defines an injury arising in the course of employment as follows:

... The term 'injury arising in the course of employment' as used in this article, ... shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

As amended March 29, 1972, P.L. 159, No. 61, § 7, 77 P.S. § 411.

1. Section 303(a) provides:
   The liability of an employer under this act shall be *exclusive and in place of any and all other liability to such employees,* ... on account of any injury ... as defined in section 301(c)(1)... [Emphasis added.]
   As amended December 5, 1974, P.L. 782, No. 263, § 6, 77 P.S. § 481.

This section has been interpreted as specifying two distinct categories of injuries arising in the course of employment. *Naugle v. Workmen's Compensation Appeal Board,* —— Pa. Commonwealth Ct. —— n. 2, 435 A.2d 295 n. 2 (1981); *Workmen's Compensation Appeal Board v. U.S. Steel Corp.,* 31 Pa. Commonwealth Ct. 329, 376 A.2d 271 (1977); *Workmen's Compensation Appeal Board v. L. L. Stearns and Sons,* 20 Pa. Commonwealth Ct. 244, 341 A.2d 543 (1975); *cf. Thomas v. Workmen's Compensation Appeal Board,* 55 Commonwealth Ct. 449, 423 A.2d 784 (1980). The first category relates to those injuries that are sustained while the employee is actually engaged in the furtherance of the business of the employer, regardless of the physical location of the injury. *Dolan v. Lintons Lunch,* 397 Pa. 114, 152 A.2d 887 (1959); *McIntyre v. Stausser,* 365 Pa. 507, 76 A.2d 220 (1950); *Butrin v. Manion Steel Barrel Co.,* 361 Pa. 166, 63 A.2d 345 (1949). The second relates to injuries occurring on the premises of the employer. *Epler v. North American Rockwell Corp.,* 482 Pa. 391, 393 A.2d 1163 (1978); *Morucci v. Susquehanna Collieries Co.,* 297 Pa. 508, 147 A. 533 (1929); *Del Rossi v. Pa. Turnpike Comm'n,* 210 Pa.Super.Ct. 485, 233 A.2d 597 (1967); *Eberle v. Union Dental Co.,* 182 Pa.Super.Ct. 519, 128 A.2d 136 (1956); *Kosavage v. State Workmen's Insurance Fund,* 109 Pa.Super. 231, 167 A. 473 (1933).

With reference to the first category the coverage of the Act is dependent upon a showing that the employee was "actually engaged in the furtherance" of the employer's affairs. The employer relies heavily on the stipulation that appellant was directed to go to the emergency room by her supervisor at the onset of her illness. While the direction of the employer or its agent may shed some light on the question of whether the injury occurred while the employee was "actively engaged in the furtherance" of the employer's affairs, it is not conclusive on that point. The mere direction to engage in the activity is not sufficient if that activity was not in furtherance of the employer's business. *Butrin v. Manion Steel Barrel Co., supra; Martin v. S. W. Ins. Fund, et al.,* 108 Pa.Super.Ct. 570, 165 A. 514 (1933);

*Bock v. Reading,* 120 Pa.Super.Ct. 468, 182 A. 732 (1936), and cases therein cited; *Hoffman v. Montgomery,* 146 Pa.Super.Ct. 399, 401, 22 A.2d 762, 763 (1941).

The employer attempts to embellish his argument by asserting that immediate care of one of its employees who becomes ill while engaged in the employment provides protection not only for the employee but also for the employer's patients. They stress the need in the health care service area of having alert and physically sound workers. They also argue that the employee's pay continued during the time she was receiving the emergency treatment.

We find it to be a tenuous proposition to argue that the indirect benefit to the employer of a healthy employee satisfies the statutory requirement of being actually engaged in the furtherance of the employer's business. It would ignore reality to deny the fact that the employee's purpose in seeking medical aid was primarily for her own benefit. While the maintenance of good health is of course of incidental value to the employer, the primary beneficiary is the employee whose well being is served.

The facts here are clearly distinguishable from those presented in *Griffin v. Acme Coal Co.,* 161 Pa.Super.Ct. 28, 54 A.2d 69 (1947). In *Griffin,* claimant reported to the office at defendant's mine, where he was employed, for the purpose of receiving his pay. Mr. Griffin did not work on that particular day and while waiting to receive his pay in the office where payment was customarily made, he fell over a board and sustained injuries which totally disabled him. The court found that claimant was in the course of his employment and therefore found the injury to be compensable. The theory of that decision was that payment is an integral part of the employment scheme. The facts also indicated in that case that it was regular practice for employees to receive payment in the manner that was employed in that case.

Here, we are dealing with an event totally extraneous to the employment scheme. The onset of illness interrupted the employee's activities pursuant to her employment and rendered her incapable of continuing those responsibilities.

The purpose of going to the emergency room was to ameliorate the disability, not to continue the performance of the employer's affairs. The fact that her prompt recovery would hasten her return to her normal activities does not alter the fact that the immediate purpose of seeking the treatment was personal.

Neither are we impressed by the fact that appellant's pay continued while she received emergency treatment. Nothing in this record suggests that if the employee had sought to utilize private resources she would not have received her pay for the day. Moreover, although there was a specific unit provided by the employer for employee health services, the employee in this instance went to and was injured in the emergency service which was open for the general public. The hospital billed Blue Cross for the treatment rendered as it would have for a member of the general public.

From the foregoing it is therefore apparent that the employer has not shown the instant injury fits within the first category of the definition of an injury within the course of employment. We therefore must now consider the applicability of the Act in view of the fact that the injury was sustained on the premises and caused by a condition of the premises [2] of the employer. The requirements for compensation where the lynchpin for liability is dependent upon the occurrence of the injury upon the premises is threefold. It must be shown that the injury was caused by the condition of the premises or by the operation of the employer's business; that the injured employee, though not so engaged, was in fact injured upon the employer's premises; and the employee's presence thereon was required by the nature of the employment.

It is clear the legislature intended to provide coverage under the Act in instances where the employee is injured upon the premises, although not actually engaged in his duties as an employee at the time of the event. This

2. The parties have stipulated that appellant was injured when the footstand of the x-ray table became loose and/or broke. The parties do not dispute that appellant's injuries were caused by a condition of the premises.

provision, however, is qualified by the requirement that the employee's presence at the time of the injury was due to the nature of the employer's business. Thus in cases where the nature of employment was such that the employee was required to be on or about the premises during an interval when he was not directly engaged in his assigned task, the employee was nevertheless covered by the Act and the injury compensable even though it was sustained while the employee was engaged in a personal mission. *Henry v. Lit Brothers*, 193 Pa.Super.Ct. 543, 165 A.2d 406 (1960) (compensation was allowed when claimant was injured during his lunch hour while he was engaged in a game of football after eating in the employees' cafeteria; employer encouraged employees to use the cafeteria, furnished a recreation room and permitted the use of the yard for athletic games); *Haas v. Brotherhood of Transportation Workers*, 158 Pa.Super.Ct. 291, 44 A.2d 776 (1945) (compensation allowed when decedent answered and was attacked by third person who inquired whether any union officials of the company were in the building); *Morrow v. James S. Murray & Sons*, 136 Pa.Super.Ct. 277, 7 A.2d 109 (1939) (compensation allowed where truck driver had prior to work engaged in setting off firecrackers with co-employee; however, at the time he was injured by firecracker in his employer's truck he had reported to work); *Oldinsky v. R. & R. C. & I Co.*, 92 Pa.Super.Ct. 328 (1927) (compensation allowed when decedent during his lunch hour jumped in chute on employer's premises to take a ride and was suffocated); *General Electric Co. v. Pa. Workmen's Compensation Appeal Board*, 50 Pa. Commonwealth Ct. 45, 412 A.2d 196 (1980) (compensation allowed when claimant was returning from vending area and co-worker's soft drink splashed in claimant's face causing him to fall).

In each of these instances it was clear that the presence on the facility of the employer was required under the terms of employment and/or facilitated the orderly and expeditious disposition of the employer's affairs. Here, the concern was the health of the employee and the employee's presence upon the premises at the time of the injury was only a fortuitous circumstance.

At the time of appellant's illness there was no doctor on duty at the Employee Health Service. Ms. Tatrai therefore went to the hospital emergency room which was open to members of the general public. The sole reason appellant went to the emergency room was for treatment of her illness. Upon her arrival to the emergency facility, Ms. Tatrai was treated as a paying patient and like any other member of the general public. Since Ms. Tatrai's presence in the emergency room was not in furtherance of the affairs of her employer and was not required by reason of her employment, we must conclude that Workmen's Compensation is not her exclusive remedy. There is no reason to distinguish appellant from any other member of the public injured during the course of treatment. The risk of injury which appellant suffered was a risk to which any member of the general public receiving like treatment would have been subjected. The occurrence of the injury was not made more likely by the fact of her employment.

The Order of the Superior Court affirming the Common Pleas Court is reversed and the complaint is reinstated.

ROBERTS, J., filed a concurring opinion in which O'BRIEN, C. J., and LARSEN and FLAHERTY, JJ., joined.

KAUFFMAN and WILKINSON, JJ., did not participate in the decision of this case.

ROBERTS, Justice, concurring.

I agree that the order of the Superior Court must be reversed, but on a ground other than that set forth by the opinion of Mr. Justice Nix. Contrary to the view of the opinion of Mr. Justice Nix, whether appellant's injury arose in the course of employment is irrelevant to appellant's right to proceed in trespass and assumpsit. All that is relevant is that appellant was injured in the course of receiving treatment in appellee's emergency room, a facility serving the general public. In holding itself out to the public as a provider of medical services, appellee hospital owed a duty to all its patients. There is no basis for distinguishing

appellant, a paying customer, from any other member of the public injured during the course of treatment. " 'All were subjected to the same danger. All were entitled to like treatment under law.' " *Reed v. The Yaka*, 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448 (1963), quoting *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143 (1953).

In an analogous setting, the Supreme Court of California recently observed:

"[I]f any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law."

*D'Angona v. County of Los Angeles*, 27 Cal.3d 661, 666, 166 Cal.Rptr. 177, 181, 613 P.2d 238, 242 (1980). The Supreme Court of Ohio has reached a similar conclusion:

"Appellee's argument is that Ohio's workers' compensation requires us to ignore the fact that appellee hospital was not only the employer of appellant, but also the treating hospital and, as such, charged with the obligations that arise in a hospital-patient relationship. . . . Appellant's need for protection from malpractice was neither more nor less than that of another's employee. . . . The appellee hospital, with respect to its treatment of the appellant, did so as a hospital, not as an employer, and its relationship with the appellant was that of a hospital-patient with all the concomitant traditional obligations. Furthermore, it is not denied that, if appellant's compensable injury had been aggravated by any other hospital, appellant would have had a cause of action for malpractice. We find no compelling reason why an action should be less viable merely because the traditional obligations and duties of the tortfeasor spring from the extra-relational capacity of the employer, rather than a third party."

*Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 189, 378 N.E.2d 488, 492 (1978). See generally 2A Larson, Workmen's Compensation Law § 72.80 (1976).

In a case involving the Longshoremen's Compensation Act, the Supreme Court of the United States similarly recognized the independent force of a duty owed to the general public:

"[O]nly blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it could not be permitted to avoid."

*Reed v. The Yaka*, supra, 373 U.S. at 415, 83 S.Ct. at 1353 (1963). Here, too, only "blind adherence" to the language of the Workmen's Compensation Act—an act designed to help, not hinder, employees in their pursuit of benefits—could deprive appellant of the opportunity to proceed on her causes of action.

Accordingly, without regard to issues relating to the Workmen's Compensation Act, appellant must be permitted to proceed directly to trial.

O'BRIEN, C. J., and LARSEN and FLAHERTY, JJ., join in this concurring opinion.