Warren H. OYSTER and Anna
Mae Oyster

v.

JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corporation, Johns-Manville Amiante Canada, Inc., Bell Asbestos Mines, Ltd., Lake Asbestos of Quebec, Ltd., Carey-Canadian Mines, Ltd., Turner & Newall, Ltd., GAF Corporation, Cape Asbestos, Cape Asbestos, Ltd., EGWEP., Ltd., Asbestos Textile Institute, Raybestos-Manhattan, Inc., Southern Asbestos Company, Keene Corporation, Fibreboard Corporation, Cassiar Asbestos Corporation, Ltd., Metropolitan Life Insurance Company and The Celotex Corporation.

Civ. A. No. 82–2734.

United States District Court,
E.D. Pennsylvania.

July 21, 1983.

---

David Weinfeld, Philadelphia, Pa., for plaintiffs.

Paul Seave, Arthur Makadon, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

■ Plaintiff[1] instituted this action against nineteen asbestos manufacturers and alleged they are responsible for various injuries which he suffers by virtue of his exposure to their products. One such defendant is Raymark Industries, Inc. (Raymark), plaintiff's former employer. Upon Raymark's motion, we concluded that the exclusivity provisions of Pennsylvania's Workmen's Compensation Act, 77 P.S. 1 et seq., barred most of the action against the employer. Plaintiff now moves for entry of final judgment pursuant to Fed.R.Civ.P. 54(b) or for certification under 28 U.S.C. § 1292(b). We deny the motion for the reasons set forth below.

Fed.R.Civ.P. 54(b) states in relevant part that

> [w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

Motions under Fed.R.Civ.P. 54(b) are addressed to the trial court's sound discretion. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10–11, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980); *Dudo v. Schaffer*, 93 F.R.D. 524, 530 (E.D.Pa.1982). Prior to the exercise thereof, however, three conditions must be met.

First, there must be multiple claims *or* multiple parties. Second, there must be a final decision "resolving" the rights and liabilities of "at least one party". Third, there must be a finding that there is no just reason for delay. *Chamberlain v. Harnischfeger Corp.*, 516 F.Supp. 428, 429–30 (E.D. Pa.1981).

The first of these conditions, the presence of multiple claims or multiple parties has clearly been met. However, because the second requirement, a final decision resolving the liabilities of one party, Raymark, has not been met, we deny the motion. Specifically, our order granting Raymark's motion resulted in the dismissal of only a portion of the complaint as to it.

■ The requirement that judgment entered under Rule 54(b) be supported by a decision which conclusively defines the rights and liabilities of at least one party or at least one "claim", evolves from the plain meaning of Rule 54(b). It is "generally accepted" that the word "claim", as used in the Rule, contemplates "one legal right growing out of a single transaction or series of related transactions". *Acha v. Beame*, 570 F.2d 57, 62 (2nd Cir.1978). Thus, a complaint which seeks to vindicate a single right through multiple remedies states but "a single claim for relief" within the meaning of Rule 54(b). *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976). *Accord, Cmax, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 679 (9th Cir.1961). One method of determining whether a complaint presents either a single "claim" or multiple "claims" against a party is to determine whether recovery under one legal theory

1. Although both Warren and Anna Mae Oyster are listed as plaintiffs, we shall refer to them simply as "plaintiff".

requires proof of "different facts" than are required to prove a second theory also advanced. *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.,* 594 F.2d 1313, 1316 (9th Cir.1979).

In the case at bar, our prior order dismissed portions of the complaint against Raymark on the theory that plaintiff could not directly maintain a cause of action in negligence against his employer. The order thus resulted in the dismissal of plaintiff's claims against Raymark which were grounded in negligence, breach of warranty and strict liability. The ruling left intact plaintiff's claims against Raymark which sound in intentional misconduct.

The primary elements of proof necessary to recover on the dismissed negligence claims require a showing that Raymark manufactured a product which resulted in harm to plaintiff. The only additional fact which plaintiff must prove with respect to the portion of the claim still at bar, also against Raymark, is the element of intent, *i.e.,* that Raymark knew that its products could cause harm to plaintiff and that they purposefully failed to so advise him.

The element of "intent", present in plaintiff's remaining counts against Raymark, requires proof of some facts different from those that are required to prove plaintiff's dismissed negligence and breach of warranty claims. However, the core of operative facts surrounding plaintiff's proofs on the intentional tort counts is the same as that which exists with regard to the dismissed counts. *Cf., Poe v. John ·Deere Co.,* 695 F.2d 1103, 1106 (8th Cir.1982) (In determining whether a second "claim" is barred for *res judicata* purposes the subsequently filed suit need not track the first one with "mathematical precision".)

Accordingly, we conclude that the degree of consanguinity between the dismissed portions of the complaint and the remainder thereof is so close as to compel the conclusion that plaintiff has, within the meaning of Rule 54(b), presented only one "claim" against Raymark. *RePass v. Vreeland,* 357 F.2d 801, 805–06 (3d Cir.1966). Because portions thereof are still pending, we may not enter judgment under the Rule. This conclusion is further supported by the precept that judgment under Rule 54(b) shall be granted neither "routinely" nor as a mere "accommodation to counsel". *Great American Trading Co. v. I.C.P. Cocoa, Inc.,* 629 F.2d 1282, 1286 (7th Cir.1980).

Plaintiffs' motion, although captioned as one under Rule 54(b), also argues that our decision to dismiss portions of the complaint against Raymark involves a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation". 28 U.S.C. § 1292(b). *General Public Utilities Corp. v. United States,* 551 F.Supp. 521, 531 (E.D.Pa.1982). Thus, plaintiff seeks permission to file an immediate appeal from an otherwise interlocutory order.

Permission to appeal from an interlocutory order is generally reserved for exceptional cases which comprise a "narrow" class. *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1977). A "controlling question of law" is defined as one which, if erroneously decided, would require reversal on appeal. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.1974). Our decision to dismiss portions of plaintiff's complaint presents such an issue.

The second criteria for 1292(b) certification requires a determination of whether there is a *"substantial* ground for difference of opinion". (emphasis added). Whether this standard has been met requires an inquiry into the merits of plaintiff's claim. Additionally, a "substantial ground for difference of opinion" may be demonstrated by adducing "conflicting and contradictory opinions" of courts which have ruled on the issue. *Dorwood v. Consolidated Rail Corp.,* 505 F.Supp. 58, 59 (E.D.Pa.1980).

Considering first the strength of plaintiff's claim, we first consider *Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. 1070 (E.D.Pa.1981), in which a panel of this

court held that Pennsylvania's Workmen's Compensation Act "precludes an employee's products liability action against his employer for injury sustained during the course of and related to his employment". *Id.* at 1076. The panel thus rejected the "dual capacity" doctrine which, notwithstanding the provisions of the Workmen's Compensation Act, would permit an employee to sue the employer in tort. The doctrine permits a tort suit against the employer where the injury

> arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee...

*D'Angona v. County of Los Angeles,* 27 Cal.3d 661, 666, 166 Cal.Rptr. 177, 613 P.2d 238 (1980). *Kohr* further opined that if the "dual capacity" doctrine were adopted in Pennsylvania, it should be done by the "state legislature" or by the "courts of Pennsylvania" rather than by a federal court sitting in diversity. *Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. at 1076. *Cf., Vargus v. Pitman Mfg. Co.,* 675 F.2d 73, 76 (3d Cir.1982) (Changes in the "basic tort law" of a state should come from the state's highest court and not from the federal courts.)

Plaintiff argues that a majority of the Pennsylvania Supreme Court affirmatively adopted the "dual capacity" doctrine in *Tatrai v. Presbyterian University Hospital,* 497 Pa. 247, 439 A.2d 1162, 1166–67 (1982), and that the panel's reluctance in *Kohr* to formulate rather than predict state law is essentially no longer relevant. We now turn to this contention.

In *Tatrai v. Presbyterian University Hospital, supra,* an operating room technician became ill during working hours. Her supervisor suggested that she go to the hospital emergency room. She suffered a fall there and sustained injuries.

A majority of the Pennsylvania Supreme Court held that she could proceed in tort even though the Workmen's Compensation Act appeared to bar the suit. In fact, the majority deemed it "irrelevant" that plaintiff's injuries arose "in the course of employment". *Tatrai v. Presbyterian University Hospital,* 439 A.2d at 1166. Their reasoning was concise and compelling:

> [A]ppellant was injured in the course of receiving treatment in appellee's emergency room, a facility serving the general public. In holding itself out to the public as a provider of medical services, appellee hospital owed a duty to all its patients. There is no basis for distinguishing appellant, a paying customer, from any other member of the public injured during the course of treatment.

*Tatrai v. Presbyterian University Hospital,* 439 A.2d at 1166.

Interpreting *Tatrai,* the Third Circuit concluded that the Pennsylvania courts would permit a tort suit by an employee against his employer for wrongful employer conduct undertaken in a capacity "additional [to] and separate" from that of the employer. *Weldon v. Celotex Corp.,* 695 F.2d 67, 71 (3d Cir.1982). The court found that plaintiff's injuries, suffered by virtue of his job-related asbestos exposure, did not arise out of any "additional and separate" role assumed by his employer. *Weldon* therefore found that *Tatrai* "does not apply". *Weldon v. Celotex Corp.,* 695 F.2d at 71.

Judge Takiff, heavily involved in presiding over asbestos cases in the Court of Common Pleas in Philadelphia County, also ruled on the "dual capacity" issue in the post-*Tatrai* setting. *See, Anastasi v. Pacor, Inc.,* 7 Phil.County Rptr. 488 (1982).

*Anastasi, id.,* read *Tatrai* as adopting the "dual capacity" doctrine only when the "distinction between a defendant's status as employer and its additional status as a manufacturer is clearly defined". 7 Phil.County Rptr. at 514. Continuing,

> [t]he independent or "dual" capacity of an employer will be recognized ... [where] there is a breach of duty owed to persons who are by coincidence employees but at the time of injury are not engaged in the business of the employer and are in their independent capacities as members of the general public. A contrary conclusion is mandated when the employee is

injured in the course of his employer's business.

*Anastasi v. Pacor, Inc.,* 7 Phil.County Rptr. at 515.

Therefore, Judge Takiff concluded that merely because an

employer happens to be the manufacturer of an allegedly defective product used by the employee in the workplace in the very performance of the work for which he was engaged should not take the employer outside the [workmen's] compensation mechanism; it is a coincidence which does not disturb the fundamental obligations and expectations arising between employer and employee.

*Anastasi v. Pacor, Inc.,* 7 Phil.County Rptr. at 516.

■ The *Anastasi* analysis of *Tatrai* is consistent with that of *Weldon.* Both cases read *Tatrai* as approving the "dual capacity" doctrine where the employee is injured by some act for which his employer is responsible and where the injury does not arise in the normal course of the employee performing his job. This conclusion is borne out by the "additional and separate capacity" language of *Weldon,* 695 F.2d at 71, the quoted portions of *Anastasi* and the facts of *Tatrai* where plaintiff's injury did not arise while discharging her normal duties. Simply stated, where the conduct of the employer *qua* employer injures an employee, the "dual capacity" doctrine is inapplicable. Where, however, the employer negligently injures the employee under circumstances extending beyond the scope of the employee's normal employment duties, the "dual capacity" doctrine permits a tort action.

■ In the case at bar, most of plaintiff's claims against Raymark arise from injuries sustained during the normal course of employment. Specifically, the complaint alleges that various defendants sold asbestos products to Raymark, the employer, and that plaintiffs fabricated the asbestos into various products. *See* Complaint ¶ 7–8. These allegations evidence that plaintiff's injuries, to the extent that they may be attributable to Raymark, primarily arose

while discharging normal functions required by the job. We accordingly believe that we correctly dismissed portions of plaintiff's complaint and do not find that there is a "substantial ground" for difference of opinion on this issue.

Plaintiff has also failed to demonstrate a "substantial ground for difference of opinion" by his inability to adduce a sufficient number of "conflicting and contradictory opinions" which have considered the issue. *Dorwood v. Consolidated Rail Corp.,* 505 F.Supp. at 59. Specifically, against a plethora of orders and decisions adduced by Raymark, all of which rejected "dual capacity" claims by asbestos workers, plaintiff has produced a single case which adopted the dual capacity doctrine in a similar factual setting. *See, Stargliano v. Johns-Manville Corp.,* (CCP, Mont.Cty., No. 80–00635) (Vogel, J.) This single case demonstrates that while there may be grounds for differences of opinion, they are not, however, *substantial.*

The final inquiry under 1292(b) is whether certification would "materially advance the ultimate termination of the litigation". This factor is neutral, neither resisting nor compelling certification.

Upon a consideration of the "practical application" of the above factors, *Katz v. Carte Blanche Corp.,* 496 F.2d at 756, we conclude that certification is unwarranted and deny plaintiff's motion. An appropriate order shall issue denying plaintiff's motions for judgment pursuant to Rule 54(b) and for 1292(b) certification.