## Pilotti v. Lukens, Inc.

*Martin K. Brigham,* for plaintiff.
*Terry W. Knox,* for defendant.

SMITH, *J.,* October 16, 1985 — This case comes to us on the preliminary objections of defendant Lukens, Inc. The issue presented is whether the exposure to asbestos of Benjamin Pilotti, while he was working on defendant's premises as the president of the United Steel Workers of America Local 1165, was a hazard faced in the course of his employment with defendant. We hold that his duties as a union official were in the course of his employment and, thus, his remedy is through workmen's compensation. Thus, we grant the demurrer and dismiss the complaint.

### FACTS

Benjamin Pilotti worked as a pipefitter/plumber at defendant's plant in Coatesville from 1946 through 1982. He worked full-time for defendant up until 1975. After that time, he worked part-time for defendant and part-time as president of the local Steel Workers Union. During that entire period, plaintiff was exposed to asbestos and asbestos fibers in the

plant, and from this exposure he contracted asbestosis and died. His wife, Elsie Pilotti, has brought this wrongful-death-and-survival action. Defendant raises in this demurrer that plaintiff's action is barred by the exclusivity provision of the Pennsylvania Workmen's Compensation Act[1] and the Pennsylvania Occupational Diseases Act.[2]

## DISCUSSION

Initially we note that preliminary objections in the nature of a demurrer[3] admit as true all well and clearly pleaded material, factual averments and all inferences fairly deductible therefrom. The complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the na-

_____

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

2. Act of June 21, 1939, P.L. 566, as amended, 77 P.S. §1201 et seq.

3. Defendant has raised the issue of exclusivity of remedy of Workmen's Compensation in its preliminary objections. Plaintiff argues that immunity from suit must be pleaded as new matter under Pa.R.C.P. 1030. Rule 1030 provides that "[all] defenses including .`. . immunity from suit . . . shall be pleaded in a responsible pleading under the heading 'New matter.' "

We have addressed this very issue in our opinion of Porter v. Borough of West Chester, 33 Chest. 165 (1984) where we held that affirmative defenses may be raised in preliminary objections. As the only practical effect of forcing defendant to refile the objections under the heading new matter would be delay and added expense, we consider the preliminary objections now.

ture of a demurrer is properly sustained. Greenspan v. United Services Automobile Association, 324 Pa. Super. 315, 471 A.2d 856 (1984).

The complaint states that Benjamin Pilotti was an employee of defendant from 1946 until 1982. It also states that from 1975 through 1983, he also worked on the premises of defendant as the President of the local Steel Workers Union and that, while working there, he was exposed to asbestos and died from this exposure.

Defendant argues that, as asbestosis is an occupational disease covered by Workmen's Compensation, and as plaintiff was exposed to asbestos as an employee of defendant, plaintiff's exclusive remedy is Workmen's Compensation.[4] Plaintiff admits that her exclusive remedy for injuries Benjamin Pilotti sustained while he was a Lukens employee is through Workmen's Compensation.[5] She argues, however, that part of his exposure occurred while he was employed by the union and he was, therefore, a member of the public endangered while on defendant's premises.[6]

---

4. Section 108 of The Workmen's Compensation Act, 77 P.S. §27.1; §108 of the Occupational Disease Act, 77 P.S. §1208.

5. Section 303 of The Pennsylvania Workmen's Compensation Act, 77 P.S. §481. Section 303 of the Occupational Diseases Act, 77 P.S. §1403.

6. Plaintiff has stated specifically in her brief that she is not arguing any other obligation of defendant to the deceased under the "Dual Capacity" doctrine. See Weldon v. Celotex Corp., 695 F.2d 67 (3d Cir., 1982). Colombo v. Johns-Manville Corp., 601 F. Supp. 1119 (E.D., Pa., 1984); Oyster v. Johns-Manville Corporation, 568 F.Supp. 83 (E.D., Pa., 1983); Kohr v. Raybestos-Manhattan, Inc., [Kohr II] 522 F.Supp. 1070 (E.D. Pa. 1981); Kohr v. Raybestos-Manhattan, Inc., [Kohr I] 505 F.Supp. 159 (E.D., Pa., 1981); Budzichowski v. Bell Telephone Co. of Pa., 503 Pa. 160, 469 A.2d 111 (1983); Tatrai v.

The Workmen's Compensation Act and the Occupational Diseases Act define employee as "[a]ll natural persons who perform services for another for a valuable consideration, exclusive of persons whose

Presbyterian University Hospital, 497 Pa. 247, 439 A.2d 1162 (1982); Kosowan v. MDC Industries, Inc., 319 Pa. Super. 91, 465 A.2d 1069 (1983); Silvestri v. Strescon Industries, 312 Pa. Super. 82, 458 A.2d 246 (1983); Anastasai v. Pancor, Inc., 7 Phil. County Reptr. 488. See generally comment, The Dual Capacity Doctrine: Piercing The Exclusive Remedy of Workers' Compensation, 43 U. Pitt. L. Rev. 1013 (1982); Comment, The Dual Capacity Doctrine in Products Liability Cases in Pennsylvania, 21 Duq. L. Rev. 995 (1983); Comment, Tatrai v. Presbyterian University Hospital, 21 Duq. L. Rev. 563 (1983); 2A A. Larson, The Law of Workmen's Compensation §72.80 (1982)).

We note however, that the doctrine would not apply here. Defendant would not fit within the separate indentity of manufacturer for purposes of products liability, as it does not produce asbestos, but rather, steel. Complaint, paragraph 6. See, e.g., Kohr II, supra:

"The rationale behind the dual capacity theory as presented to us in these cases is that the existence of an employment relationship between the injured party and the manufacturer of the product causing the injury is of reduced importance when viewed in the context of a products liabilty action. As applied to products liability cases, the theory reasons that since the employer is also the manufacturer of the product which allegedly caused injury and which would thus give rise to products liability were it not for the existence of the employment relationship, liability ought not to be avoided merely because of that employment relationship. Rather, the theory proposes, the societal interests which led to the adoption of products liability are so strong as to transcend those interests which are beyond the exclusivity or remedy provision of the Workmen's Compensation Act." 552 F.Supp. at 1073.

Nor does defendant fit within the category of medical office. See Tatrai, supra, Budzichoswki, supra. Claims under the alternative identity of landowner fail, because almost every employer has a premises as a workplace. Such a distinction would reduce the exclusivity of the Workmen's Compensation remedy to shambles. Larson, supra, at §78.82.

employment is causal in character and not in the regular course of business of the employer. . . ."[7] Furthermore, "injury" means "an injury to an employee . . . arising in the course of his employment [and] shall include occupational disease as defined in section 108 [77 P.S. §27.1] of this act."[8]

Thus, the issue presented is whether one acting as a union official under the circumstances presented is within the course of one's employment for purposes of workmen's compensation.

Two strong indications of action within one's employment are one's presence on the employer's premises and whether one's action is in furtherance of the employer's business. Tatrai v. Presbyterian University Hospital, 497 Pa. 247, 439 A.2d 1162 (1982); Universal Cyclops Steel Company v. Krawczynski, 9 Pa. Commw. 176, 305 A.2d 757 (1973).

Here, Pilotti was on defendant's premises when he was exposed to the asbestos fibers. Furthermore, as union president, Pilotti was engaged in activities in furtherance of defendant. There are situations in which union activities can be considered an "abandonment of employment, or an action wholly foreign to the claimant's employment" and, thus, not part of the employer's business. Such would be the case with an unauthorized strike, see Universal Cyclops Steel Company v. Krawczynski, 9 Pa. Commw. 176, 305 A.2d 757 (1973), or with a rank-and-file union member's voluntary entrance on the

---

7. Section 104 of the Workmen's Compensation Act, 77 P.S. §22; §104 of the Occupational Diseases Act, 77 P.S. §1401.

8. Section 301(c) of the Workmen's Compensation Act, as amended, 77 P.S. §411. See also §301 of the Occupational Diseases Act, 77 P.S. §1401.

plant to settle a matter between the union and an individual member, with no relation to the company, see Bullock v. Building Maintenance, Inc., supra. However, the activities of a union president over the course of eight years are mutually beneficial to both labor and management, and injury flowing from such activity is in furtherance of the employer's business. In Repco Products Corp. v. Workmen's Compensation Appeal Board, 32 Pa. Commw. 554, 379 A.2d 1089 (1977), a dispute arose between the claimant, the union shop steward and a fellow worker regarding strong union pressure for increased wages and culminated in a physical assault. The attack on the claimant was compensible, the court held, as activities flowing from a union office are within the scope of the employee's business.

In Salierno v. Micro Stamping Co., 136 N.J. Super. 172, 345 A.2d 342 (1975), in which an employee representing the union during a bargaining session suffered a heart attack was held to be within the course of his employment, the court wrote:

"The present milieu of unions and union representatives in most industries of any appreciable size dictates the current acceptance of the truism that an employer cannot exist without negotiation and agreement with a team of union representatives. In such a structured pattern of employer-employee relationships it follows that the union representative . . . is as essential a part of conducting a business as the employer's management personnel. What the union representatives do and how they fashion their demands is an essential part of every unionized business." Id. at 175, 345 A.2d at 345. In the same way, the daily management of a labor union is essential to industrial peace and employee satisfaction, requisite elements of a healthy business. See

also Fidelity and Casualty Co. v. Landis, 89 Ga. App. 100, 78 S.E.2d 878 (1953); Herndon v. UAW, Local No. 3, 56 Mich. App. 435, 224 N.W.2d 334 (1974); Gerand v. American Can Co., 32 N.J. Super. 310, 108 A.2d 293 (1954).

Thus, as Pilotti was working in furtherance of defendant's business, his injury comes within the coverage of The Workmen's Compensation Act and, thus, this action is barred.

## ORDER

And now, this October 16, 1985, we sustain the preliminary objections of defendant, Lukens, Inc., and dismiss the complaint with prejudice.