**BENJAMIN MOORE & CO., Plaintiff,**

v.

**TALON PAINTS PRODUCTS, INC., Defendant.**

**Civil Action No. 91–3630 (JCL).**

United States District Court, D. New Jersey.

March 11, 1996.

Patrick Joseph Monaghan, Jr., Monaghan, Rem & Zeller, Hackensack, NJ, for Plaintiff.

Nino F. Falcone, North Bergen, NJ, for Defendant.

## OPINION

LIFLAND, District Judge.

The parties to this multiclaim action have filed motions relating to this Court's earlier grant of summary judgment in favor of plaintiff on its federal trade dress infringement claim. At this time, three of plaintiff's claims against defendant remain unadjudicated: federal trademark infringement, common law trade dress infringement, and unfair competition, pursuant to N.J.S.A. § 56:4–1, *et seq.* All of defendant's counter-claims were dismissed on July 18, 1995 on plaintiff's motion for summary judgment.

Plaintiff has moved for entry of final judgment pursuant to *Fed.R.Civ.P.* 54(b) on its trade dress infringement claim, brought pursuant to § 43(a) of the Lanham Act. Plaintiff has also stated that, if its motion for final judgment is not granted, it will voluntarily dismiss its remaining claims with prejudice, with the exception of its trademark infringement claim, which it is willing to withdraw without prejudice.

Defendant, on the other hand, asks the Court to vacate its Orders of March 29, 1994

and July 18, 1995 [1] relating to the trade dress issue in light of the Third Circuit's ruling in *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995).

*Background*

By order dated March 29, 1994, the Court ruled on plaintiff's and defendant's cross-motions for summary judgment. The Court found that defendant's "AQUA–FLOW" trade dress was confusingly similar to plaintiff's AQUAGLO trade dress and permanently enjoined defendant from offering for sale paint products embodying a trade dress substantially similar to plaintiff's AQUAGLO trade dress. The Court further ordered that defendant submit new labels to the Court for approval.

On July 18, 1995, the Court ruled that defendant had intentionally infringed plaintiff's trade dress under § 43(a) of the Lanham Act, making this an exceptional case under 15 U.S.C. § 1117(a). The Court awarded $74,857.10 in damages, *i.e.,* lost profits, and $220,983.03 in attorneys' fees for the trade dress infringement. These amounts reflected damages and fees that had accrued through October 1994. Plaintiff stated that it would move for further damages relating to lost profits occurring after October 1994 at a later time. The Court also rescinded the parties' settlement agreement dated April 15, 1988 and ruled that, in light of this rescission, plaintiff was permitted to oppose and seek cancellation of the "AQUA–FLOW" trademark registered under Serial No. 648,607 with the United States Patent and Trademark Office.

*Defendant's Motion to Vacate Prior Orders and for Approval of Labels*

Defendant argues that the Court should vacate its previous summary judgment rulings and approve old and new labels for its "AQUA–FLOW" paint in light of this vacatur. Defendant sets forth two bases for its motion. Defendant first argues that the Third Circuit's decision in *Versa Products*

*Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995), clarifies the law of trade dress infringement in such a way as to demonstrate that plaintiff's claim should fail. Secondly, defendant has submitted copies of "private labels" issued by plaintiff to its dealers. Defendant argues that these private labels are confusingly similar to plaintiff's AQUAGLO trade dress and that under *Versa,* plaintiff does not have a protectable trade dress right in the appearance of its AQUAGLO product. It is undisputed that these private labels had been used by plaintiff and were discoverable before the Court rendered its March 29, 1994 decision.

Defendant argues that its motion is neither a motion for reconsideration and reargument pursuant to Local Rule 12(I) nor a motion for relief from judgment pursuant to *Fed.R.Civ. P.,* Rule 60(b). Indeed, defendant's motion does not fall within the requirements of either of rules. Local Rule 12(I) provides that a motion for reargument may be filed within ten days after the entry of the order or judgment on the original motion. Defendant has clearly missed the window for filing a reargument motion.

*Fed.R.Civ.P.,* Rule 60(b) sets forth various grounds upon which a party may move for relief from a final judgment or order. Therefore, the procedural limitations of Rule 60 apply to defendant only if the Court's grant of partial summary judgment constitutes a final judgment. As discussed in relation to plaintiff's motion for entry of final judgment, below, the Court's previous summary judgment orders are not final. Therefore, although the Court notes that defendant's motion is inexplicably delayed, it will proceed to consider the merits of defendant's motion, placing the burden on defendant's shoulders to demonstrate to the Court why it should disturb its earlier rulings.

■ The Court based its earlier trade dress ruling on the ten factors for analysis of "likelihood of confusion" in a Lanham Act

---

1. Although defendant refers to a July 17, 1995 order, the Court did not file an order on that date. The substance of the order challenged by defendant makes it clear that defendant's motion refers to the Court's order filed July 18, 1995. The Opinion accompanying that order was filed July 17, 1995. Both the Opinion and Order were signed by the Court on July 14, 1995.

action set out by the Third Circuit in *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978). Defendant argues that *Versa*, 50 F.3d 189, altered the *Scott* criteria for determining likelihood of confusion in a product packaging trade dress case by placing added emphasis on the presentation of the manufacturer's name on a product's packaging. Defendant relies upon the following quote from *Versa*:

> "The most common and effective means of apprising intended purchasers of the source of goods is a prominent disclosure on the container, package wrapper, or label of the manufacturer's or trader's name ... [and when] that is done, there is no basis for a charge of unfair competition." *Venn v. Goedert*, 319 F.2d 812, 816 (8th Cir.1963), *quoted in Litton Sys., Inc. [v. Whirlpool Corp.]*, 728 F.2d [1423] at 1446 [Fed Cir.1984].
>
> Indeed, except where consumers ordinarily exercise virtually no care in selecting a particular type of product (as may be the case with inexpensive disposable or consumable items, *cf. Venn, supra* (cookies)), clarity of labeling in packaging and advertising will suffice to preclude almost all possibility of consumer confusion as to source stemming from the product's configuration.

*Id.* at 203. Based on this excerpt, defendant asks the Court to vacate its previous judgment and to rule that defendant did not infringe plaintiff's trade dress because its labels clearly display the manufacturer name Talon or American Home Paint.

Defendant has taken the *Versa* decision totally out of context. *Versa* involved a claim of product configuration trade dress infringement. Defendant claims that, based on *Versa*, "it is hard to countenance any significant differences between a product packaging trade dress case and a product configuration trade dress case." This is a mischaracterization of the *Versa* decision, which stated at the outset that "the law of trade dress in product configurations will differ in key respects from the law of trademarks or of trade dress in product packaging." *Id.* at 202. Indeed, the question before the *Versa* court was whether the "*Scott* factors" apply in the same

way to product configuration and product packaging trade dress cases. *Id.* at 193. The court held that they do not: "we conclude that ... some but not all of the "*Scott* factors," ... are pertinent, because of policy considerations applicable in product configuration cases." *Id.*

The *Versa* court went on to contrast the situation before it, both on the facts and the law, with the type of situation presented by the instant case. The products at issue in *Versa* were valves used in the highly specialized area of off-shore oil rig emergency shutdown systems. Purchasers of these valves were knowledgeable and highly sophisticated. The valves were sold exclusively through catalogues and trade shows. There were no "off-the-shelf" or store sales. The configuration of the adverse parties' products was similar, except that the name of the manufacturer was printed on the valve. The court noted that product appearance plays a lesser role in a buyer's selection process when the product at issue is marketed to a particular industry for an industrial use, as in the case of the valves, than when it is marketed to the public at large for general consumption, as is house paint. *Id.* at 204. Finally, the *Versa* court determined that the manner in which the valves were sold virtually precluded the likelihood of consumer confusion based on their configuration. *Id.* at 213.

The factors set forth in *Scott Paper* and relied upon by this Court in determining that defendant infringed plaintiff's product packaging trade dress were not altered by the Third Circuit in *Versa*. Therefore, the Court will adhere to its previous ruling that defendant's "AQUA–FLOW" trade dress was confusingly similar to defendant's AQUAGLO trade dress, in violation of the Lanham Act, Section 43(a).

■ Defendant's second argument relies upon plaintiff's sales of paint under private labels. Defendant has attached copies of these private labels to the affidavit of Joseph G. Pica and argues that they are confusingly similar to plaintiff's AQUAGLO trade dress. Defendant argues that plaintiff's use of the allegedly similar private labels undermines plaintiff's claim of a protectable trade dress claim in its AQUAGLO label. The Court

need not determine if these private labels are, in fact, confusingly similar to plaintiff's because the law of the Third Circuit will protect plaintiff's trade dress whether the trade dress of the private labels is similar or not.

The sole legal support offered by defendant for its proposition about plaintiff's private labels is a brief passage from *Versa:*

> We doubt that a company truly concerned about the quality of its valves and its putatively distinctive product configuration would use · private labeling. The use of private labeling undermines a claim that a product's appearance denotes its source, because consumers will be less likely to associate the multifariously labeled product with a single source. And if Versa were to contend that all the purchasers know that in fact Versa manufactures the valves identified by a private label, we are not certain what the private labeling would accomplish. Moreover, it would seem that any manufacturer employing private labeling for its product necessarily exercises control over the practice, and if it is the plaintiff's actions that cause the confusion, the plaintiff will not be heard to complain.

50 F.3d at 216. Defendant argues that this excerpt establishes that use of private labels weakens a claim of inherent distinctiveness or secondary meaning in product packaging. Once again, defendant has taken the words of the *Versa* court totally out of context.

The court made the comments above in response to plaintiff's argument· that defendant in *Versa,* a foreign manufacturer of oil rig emergency system valves, should not be permitted to enter the U.S. market with a product configuration similar to plaintiff's because consumers might assume that the competitor's valves were actually manufactured by plaintiff under a private label. *Id.* at 215–216. The court did not make the above statements in relation to product packaging. The "appearance" referred to by the court is the appearance of the product itself. The appearance of plaintiff's and defendant's paints, themselves, is not at issue in this action. The true meaning of the excerpt is that a plaintiff cannot use its own private labelling as an. excuse to keep legitimate

competitors out of the market. The *Versa* court did not state that a plaintiff who engages in private labelling waives its rights to its distinctive product packaging trade dress.

Nonetheless, defendant argues that the fifth *Scott* factor, strength of the owner's mark, does not favor a finding of likelihood of confusion of origin in light of plaintiff's use of the allegedly similar private labels. The *Versa* court provided the following· explanation of the relationship between the strength of a trade dress and consumers' likelihood of confusion when confronted with a similar trade dress by a second comer to the market:

> Strength includes both '[d]istinctiveness on· the scale of trademarks' and '[c]ommercial strength, or marketplace recognition.' *Fisons Horticulture, Inc. [v. Vigoro Industries, Inc.],* 30 F.3d [466] at 479 [3rd Cir. 1994]. A strong trademark is thus one that carries widespread, immediate recognition that one producer (even if unknown) is associated with the mark, and so with the product. If a second comer adopts a mark substantially identical to a strong mark, there is a correspondingly high likelihood that consumers will mistakenly associate the newcomer's product with the owner of the strong mark. The same may be said of a "strong" trade dress consisting of a product's packaging.

*Id.* at 203. The Court fails to see how use of private labels would dilute the distinctiveness of plaintiff's trade dress or its marketplace recognition. ·

Defendant misapprehends the goal of the trade dress law, which is to· prevent consumer confusion as to product origin, not as to the producer's name. In other words, a · trade dress ·is strong if associated with "one producer (even if unknown)." *Id.* Like the Third Circuit, the Federal Circuit, applying Eighth Circuit law, has held that in order for secondary meaning to exist in a trade dress, the public need only · associate that trade dress with a single manufacturer, even if the identity of that manufacturer is unknown. *See Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1204 (Fed.Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). In *Tone Bros.,* the court ruled that even where ninety percent of the plaintiff

manufacturer's sales were made under private labels, it·was possible for the plaintiff to prove that the consuming public identified its trade dress, consisting of its container shape and material, with a single, though anonymous, product source. *Id.* at 1203–1204, *citing, Kampgrounds of America, Inc. v. North Delaware A–OK Campground, Inc.,* 415 F.Supp. 1288, 1293 (D.Del.1976), *aff'd without op.,* 556 F.2d 566 (3d Cir.1977) ("The significance of secondary meaning is not that the consumers know the identity of the provider of services, but rather that they regard all services labeled with the mark as originating from a single source.") In this case, if consumers of the private label paints associated those labels with plaintiff and believed that the paint was made by plaintiff, they were correct. In effect, the trade dress would have done its job by identifying the manufacturer of the paint inside the privately labelled container as Benjamin Moore. That is the purpose of trade dress—to identify a· single product origin, even if unknown. If defendant's labels are confusingly similar to plaintiff's, on the other hand, consumers will not be able to determine who produced the paint they are buying. This is precisely what the law of trade dress is designed to prevent. Therefore, the private labelling, if similar, would not create confusion as to product origin.

Furthermore, defendant has failed to convince the Court that plaintiff's private labeling was so copious that, if similar, it would prevent the AQUAGLO trade dress from being identified with a single producer. Plaintiff's Creative Services Manager Peter Bishop has presented testimony that the private labels were used on a limited basis by a few distributors through a subsidiary of Benjamin Moore, Academy Paint, that is no longer active. The private labels were used for a limited time, in limited locations. Most importantly, they are no longer made at all. AQUAGLO, on the other hand, is distributed nationwide by a nationally known company. On the showing before the Court, no reasonable fact finder could determine that the limited, discontinued use of the private labels by a few retailers made the look of plaintiff's AQUAGLO so common as to prevent the consuming public at large from identifying the AQUAGLO trade dress with a single manufacturer.

If the Court permitted defendant to continue using its "AQUA–FLOW" trade dress, a consumer selecting paint would be confronted only with plaintiff's and defendant's confusingly similar labels. In essence, defendant asks this Court to find that its trade dress, intentionally copied in detail from plaintiff's AQUAGLO labels, will not confuse consumers because they may remember that they once saw a can of paint similar to the two similar cans now on the shelf. To do so would not only be illogical but would allow defendant blatantly to thwart plaintiff's right to control the reputation it has built with the public through a long history of paint production.

Defendant has conditioned is motion for approval of its previous labels, as well as newly-submitted label "3B," attached to defendant's proposed order, upon this Court's vacatur of its previous orders. As the Court declines to alter its previous rulings, defendant's motion for approval of labels will be denied.

*Plaintiff's Motion for Entry of Final Judgment*

Plaintiff moves for entry of final judgment on its Lanham Act trade dress infringement claim. By letter dated February 26, 1996, plaintiff has expressed its willingness to dismiss its remaining trade dress-related claims with prejudice, namely its claims for common law trade dress infringement, unfair competition under N.J.S.A. § 56:4–1, and damages under the Lanham Act accruing after October 1994. In addition, plaintiff has alerted the Court that it is willing to dismiss its trademark claim without prejudice, consistent with this Court's order of July 18, 1995 which provided that plaintiff may oppose or seek cancellation of the AQUA–FLOW trademark before the Patent and Trademark office.

*Discussion*

■ The Court's ability to enter final judgment on one claim of a multiclaim action is addressed by *Fed.R.Civ.P.,* Rule 54(b), which provides in relevant part that:

When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Although piecemeal litigation is generally disfavored by the federal courts, Rule 54(b) "was designed to remedy the harsh effects that sometimes result from a delayed appeal in litigation presenting multiple claims or multiple parties." *Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990). In *Kanasco*, the Third Circuit addressed the propriety of entering final judgment as to a single claim in a multiclaim action. A district court must consider two issues when evaluating a Rule 54(b) motion for entry of final judgment. First, the court must determine whether "it is dealing with a 'final judgment' ... in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* If that hurdle is cleared, the district court must exercise its discretion to determine that the matter is "ready for appeal ... tak[ing] into account judicial administrative interests as well as the equities involved." *Id.* This Court will apply the *Kanasco* analysis to the case at bar.

*Finality*

The Court must first decide whether its judgment on plaintiff's Lanham Act trade dress infringement claim is "final." "Finality" is defined by the requirements of 28 U.S.C. § 1291 ("The courts of appeals ... shall have jurisdiction of appeals from all final decision of the district courts of the United States.") In *Kanasco*, the Court described these requirements as "ending 'litigation on the merits' and leav[ing] nothing for the court to do but execute the judgment." *Kanasco* at 1153, quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). Rule 54(b) only permits a final judgment to be entered if it "has the requisite degree of finality as to an individual claim in a multiclaim action." *Id.*

Plaintiff requests entry of final judgment on its federal, statutory trade dress infringement claim, but previously expressed to the Court an intent to move for further damages relating to that claim. The *Kanasco* court stated that the partial adjudication of a single claim is not final and thus not eligible for entry of final judgment. Therefore, because further adjudication as to damages is required on the trade dress infringement claim, adjudication as to that claim is not final.

■ Further, where a party has essentially one claim, although phrased under diverse theories of liability, a court may not grant Rule 54(b) entry of final judgment where claims that revolve around the operative facts of the dismissed claim still remain in the case. In *Oyster v. Johns–Manville Corp.*, a personal injury case, the district court dismissed counts by the plaintiff against his employer based on negligence, breach of warranty and strict liability. 568 F.Supp. 83 (E.D.Pa.1983), *appeal dismissed*, 770 F.2d 1066 (3d Cir.1985). A count of intentional misconduct, relating to the operative facts of the dismissed claims, remained in the action. Even though the intentional misconduct claim required a showing of an additional element, *i.e.*, knowledge or intent, the court held that the overlap of operative facts precluded certification of the dismissed claims:

> [T]he core of operative facts surrounding plaintiff's proof on the intentional tort counts is the same as that which exists with regard to the dismissed counts.
>
> ... [T]he degree of consanguinity between the dismissed portion of the complaint and the remainder thereof is so close as to compel the conclusion that plaintiff has, within the meaning of Rule 54(b), presented only one claim.

*Id.* at 86. This analysis was adopted in full by *Kanasco*, 920 F.2d at 1155, quoting *Oyster*, 568 F.Supp. at 86. Here, plaintiff wishes certification of his Lanham Act trade dress infringement claim. However, a common law trade dress infringement claim and a New Jersey statutory claim for unfair competition, which could include trade dress infringement, remain in the case. The close relation of the remaining claims to trade dress infringement

precludes a finding that adjudication is final. Thus, entry of final judgment under Rule 54(b) is not appropriate.

As noted above, plaintiff has stated, as its "fall-back" position, that if the Court does not enter final judgment, it will dismiss its remaining trade dress claims with prejudice, including the claim related to further damages. The Court will take plaintiff at its word and dismiss those claims. Plaintiff has also stated that it is willing to dismiss its trademark claim without prejudice. The Court feels that such dismissal is appropriate in this action. The basis upon which the Patent and Trademark Office ("PTO") considered plaintiff's initial challenge to defendant's trademark included consideration of the Settlement Agreement. Because the Court subsequently rescinded that agreement, part of the basis for the PTO's decision no longer exists. Plaintiff has represented to the Court that it now intends to pursue its trademark claims before the PTO. Thus, it appearing that further administrative or judicial proceedings in the matter of the allegedly infringing trademark are appropriate, the Court will dismiss plaintiff's trademark claim without prejudice.

Because these dismissals dispose of the remaining claims in this case, plaintiff's request for entry of final judgment pursuant to Rule 54(b) is now moot.

### ORDER

For the reasons set forth in the accompanying Opinion, **IT IS** on this 11th day of March, 1996 **ORDERED** that defendant's motion to vacate this Court's orders dated March 29, 1994 and July 18, 1995 is denied; and

**IT IS FURTHER ORDERED** that defendant's motion for approval of labels is denied and that defendant shall continue to comply with the procedures for approval of labels set out in this Court's earlier orders; and

**IT IS FURTHER ORDERED** that plaintiff's claims of common law trade dress infringement and unfair competition pursuant to N.J.S.A. § 56:4–1 are dismissed with prejudice; and

**IT IS FURTHER ORDERED** that plaintiff's claim for damages occurring after October 1994 pursuant to Section 43(a) of the Lanham Act is dismissed with prejudice; and

**IT IS FURTHER ORDERED** that plaintiff's trademark claim is dismissed without prejudice, consistent with this Court's order of July 18, 1995 which provided that plaintiff may renew, oppose or seek cancellation of the AQUA–FLOW trademark before the United States Patent and Trademark Office; and

**IT IS FURTHER ORDERED** that plaintiff's motion for entry of final judgment pursuant to Rule 54(b) on its Lanham Act trade dress infringement claim is denied as moot.