690 A.2d 1152

**Cathy L. SNYDER and Kenneth Snyder, Appellants,**

**v.**

**POCONO MEDICAL CENTER and
Rose Galozzo, R.N., Appellees.**

Supreme Court of Pennsylvania.

Argued May 1, 1996.

Decided March 19, 1997.

Reargument Denied May 21, 1997.

Donald E. Matusow, Fredric S. Eisenberg, Philadelphia, Gus Milides, Easton, John R. Vivan, Jr., Co-Counsel, for Snyders.

James M. Penny, Jr., Elizabeth A. Lloyd, Philadelphia, for Galozzo, et al.

## *ORDER*

PER CURIAM.

The Court being evenly divided, the order of the Superior Court is affirmed.

NIX, Former C.J., did not participate in the consideration or decision of this case.

ZAPPALA, J., files an Opinion in Support of Affirmance in which FLAHERTY, C.J., and CASTILLE, J., join.

NIGRO, J., files an Opinion in Support of Reversal in which CAPPY and NEWMAN, JJ., join.

## *OPINION IN SUPPORT OF AFFIRMANCE*

ZAPPALA, Justice.

This case presents the issue of whether Appellant's tort action against her employer/hospital and a co-employee/nurse is precluded by the exclusivity clause of the Workers' Com-

pensation Act. Cathy Snyder was employed as a respiratory therapy technician at the Pocono Medical Center. Sometime in 1977, while in the performance of her employment duties, she was exposed to tuberculosis. Upon recommendation of Rose Galozzo, a nurse in the hospital's infectious disease control department, and pursuant to the hospital's employee health program, Snyder submitted to a tine test. When the test results were positive, Galozzo recommended that Snyder undergo periodic chest x-rays, which were consistently negative. Accordingly, *no other treatments were recommended.* In April 1986, while at work, Snyder became ill and was taken to the hospital's emergency room. She was diagnosed as having adrenal failure.

Snyder subsequently filed a civil action against Pocono Medical Center and Galozzo, alleging that she had received negligent treatment while participating in the employee health program. At trial, she presented expert testimony establishing that prompt detection and proper treatment with the prophylactic antibiotic INH would have prevented the spread *of disease throughout her body. As a result of her condition,* Snyder must take adrenal replacement medication for the rest of her life.

The jury ruled in favor of Snyder and Appellees' post-trial motions were denied. The Superior Court reversed, holding that because Snyder participated in the employee health monitoring program pursuant to her employment, her remedies were limited to those under the Workers' Compensation Act.

I agree. Snyder's exposure to tuberculosis arose in the course of her employment and she was treated pursuant to a protocol established by the hospital specifically for employees who were exposed to tuberculous organisms.[1] The hospital

1. The Medical Center had an established "Procedure for Follow Up for Personnel Exposed to Tuberculus Organisms." The procedure provided that after notification of positive culture and/or smear had been obtained, and definitive diagnosis made, all hospital personnel who had been exposed would be identified and pertinent information would be obtained by the health nurse who carried out the program. The following medical procedures were to be taken upon exposure:

was therefore not acting in a dual capacity as an employer and medical provider. This case is analogous to *Budzichowski v. Bell Telephone Co. of Pa.*, 503 Pa. 160, 469 A.2d 111 (1983). The employee there was a telephone installer who was injured during the course of his employment. He went to his employer's medical dispensary and subsequently commenced an action for negligent medical treatment. We held that the employee's exclusive remedy was that provided by the Workmen's Compensation Act.

The Opinion in Support of Reversal relies upon *Tatrai v. Presbyterian University Hospital*, 497 Pa. 247, 439 A.2d 1162 (1982). The hospital employee in *Tatrai* became ill while on duty and was instructed by her superior to go to the emergency room for treatment. While there, she was injured when she fell off an x-ray table that had a loose foot stand. The Court held that the Workmen's Compensation Act did not preclude her from commencing an action against the hospital. The decision was based on the fact that there was no reason to distinguish the employee from any other patient who had been injured during the course of treatment in an emergency room open to the general public. *Tatrai*, however, is distinguishable from the instant case. In *Tatrai*, "although there was a specific unit provided by the employer for employee health services, the employee ... went to and was injured in the emergency service which was open for the general public." *Id.* at 253, 439 A.2d at 1165.[2]

> In no less than 28 days, and preferably after 30 days, following the latest exposure, a Tine test using Purified Protein Derivative will be given to all personnel with [certain exceptions].
> All personnel who have a previous negative reaction to a Tine test who are on this testing occasion found to be positive will have a chest x-ray.
> Final follow up will take place in six months. The personnel who had a negative response to the tine test will have a repeat tine test done after a six-month interval. Those personnel who converted to positive with the most recent tine test and/or had a negative chest x-ray will have a repeat chest x-ray after a six month interval.
> R. at 209a.

2. Tatrai went to the emergency room since there was no doctor on duty at the Employee Health Service at the time of her illness. See *Id.* at 255, 439 A.2d at 1166.

Here, Snyder was tested by Nurse Galozzo, who testified that the hospital protocol applied to hospital employees. R. 64a. The protocol did not require the administration of INH. Snyder alleged in her complaint that the hospital never advised her to take INH as a preventive medication for tuberculosis, although it was regularly prescribed by medical physicians to prevent the disease. Her claim therefore arises from the alleged inadequacy of the employee health monitoring program. The fact that the *place* where her treatment was rendered was open to the public is not controlling. What is dispositive of the issue is the *manner* of the treatment given, i.e., pursuant to an employee health policy.

In *Budzichowski*, we expressly distinguished *Tatrai* on the ground that unlike the hospital emergency room, the medical dispensary treated the employee solely because of his employment relationship. As explained above, the treatment in the instant case also arose from such relationship.

As the Superior Court aptly noted,

Where, as here, the employee contracts tuberculosis while employed by the hospital and is monitored and treated by the hospital in a program available only to employees, the employee's remedies, even if he or she was treated negligently, are limited to those provided by the Worker's [sic] Compensation Act. Because of the nature of its business, the hospital-employer had a vested interest in monitoring employees who were exposed to contagious diseases so that further contamination of its patients and staff could be prevented.

*Snyder v. Pocono Medical Center,* 440 Pa.Super. 606, 614, 656 A.2d 534, 538 (1995).

It is well established that the exclusivity clause of the Workers' Compensation Act, 77 P.S. § 481, reflects the historical *quid pro quo* between an employer and employee whereby the employee is relieved of the burden of establishing fault for a work-related injury, and is compensated expeditiously. The employer in turn is relieved of the possibility of a larger damages verdict in a common law action. *Ducjai v. Dennis,*

540 Pa. 103, 656 A.2d 102 (1995). The comprehensive system of substantive, procedural, and remedial laws comprising the workers' compensation system is the exclusive forum for redress of injuries in any way related to the work place. *Id.*

Because Snyder's injuries and the treatment thereof were related to her employment, her exclusive remedy is pursuant to the Workers' Compensation Act. Accordingly, I would affirm the decision of the Superior Court.

FLAHERTY, C.J., and CASTILLE, J., join this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIGRO, Justice.

Cathy and Kenneth Snyder appeal a Superior Court Order that reversed a jury verdict in their favor. The jury found that Pocono Medical Center and Nurse Rose Galozzo negligently detected and treated Cathy Snyder's tuberculosis. The Superior Court held that the Snyders' exclusive remedy is under the Workmen's Compensation Act and reversed. For the reasons set forth below, the Superior Court's decision should be reversed.

Cathy Snyder worked as a respiratory therapy technician at Pocono Medical Center. In 1977, Nurse Rose Galozzo told Snyder that she may have been exposed to a patient who tested positive for tuberculosis. Pursuant to a hospital employee health program and Nurse Galozzo's recommendation, Snyder was tested for tuberculosis. When the test results were positive, Nurse Galozzo recommended that Snyder undergo periodic chest x-rays to monitor the disease. The x-ray results were consistently negative and neither the hospital nor Nurse Galozzo recommended any treatment. In 1986, Snyder became severely ill at work. Doctors diagnosed adrenal failure and later tests confirmed that Snyder's adrenal glands were destroyed. Snyder must take adrenal replacement medication for the rest of her life.

Snyder sued Pocono Medical Center and Nurse Galozzo alleging that they negligently failed to treat her condition with a prophylactic antibiotic that prevents the spread of tuberculosis. At trial, Snyder's doctor traced the adrenal failure to her earlier exposure to tuberculosis and opined that prompt detection and treatment would have prevented the disease from spreading throughout Snyder's body. A jury awarded Snyder $775,000.00.

Pocono Medical Center and Nurse Galozzo moved for judgment notwithstanding the verdict claiming that the Snyders' exclusive remedy is under the Workmen's Compensation Act. *See* 77 P.S. § 481(a)(the Act provides the exclusive remedy for injuries arising in the course of employment).[1] The trial court held that the hospital provided medical services to Snyder in its capacity as a hospital, not as an employer, and thus Snyder could sue for negligence pursuant to our decision in *Tatrai v. Presbyterian Univ. Hosp.*, 497 Pa. 247, 439 A.2d 1162 (1982).

The Superior Court reversed. Relying upon our decision in *Budzichowski v. Bell Telephone Co. of Pa.*, 503 Pa. 160, 469 A.2d 111 (1983), it held that Snyder's injury is related to her employment and that her exclusive remedy is under the Workmen's Compensation Act. We granted allocatur to revisit the dual capacity doctrine applied in *Tatrai*, 497 Pa. 247, 439 A.2d 1162, and further defined in *Budzichowski*, 503 Pa. 160, 469 A.2d 111.

In *Tatrai*, a hospital employee became ill at work. Her supervisor told her to go to the hospital emergency room. The employee was injured when the foot stand of an x-ray table became loose and caused her to fall from the table. She sued the hospital for negligence. The hospital argued that the employee's exclusive remedy was under the Workmen's Compensation Act. This Court disagreed. 497 Pa. at 255, 439 A.2d at 1166. In holding itself out as a provider of medical services, a hospital owes a duty to all of its patients. *Id.* at 255–6, 439 A.2d at 1166–67. We saw no basis to distinguish the employee-patient from other members of the public in-

---

1. Other arguments raised in the motion are not now at issue.

jured during treatment. *Id.* Because the action was based on obligations arising in a hospital-patient relationship, not an employer-employee relationship, we held that the Workmen's Compensation Act did not apply. *Id.* at 255–7, 439 A.2d at 1166–67.[2]

We reached a contrary result in *Budzichowski.* In that case, a telephone installer fell while working and was injured. Doctors at the company medical dispensary diagnosed strained muscles, gave the employee muscle relaxers and told him to go back to work. The employee's pain continued and an independent doctor later diagnosed bone deterioration as a result of the fall. We held that the employee's exclusive remedy was under the Workmen's Compensation Act and that he could not sue the company. 503 Pa. at 168, 469 A.2d at 115. We distinguished this case from *Tatrai* because the company's medical service was unavailable to the public. Because the employee could not have received the treatment absent his employment relationship with the company, the company did not act in dual capacities as an employer and medical provider. *Id.*

The present case is similar to *Tatrai* and the dual capacity doctrine should apply. Snyder's lawsuit is based upon a hospital's negligent medical treatment. Like in *Tatrai,* Snyder sought medical treatment at the hospital where she worked. The hospital holds itself out to the public as a medical service provider. It owes a duty of care to all of its patients. There is no basis to distinguish Snyder from any other member of the public injured during the course of treatment. Unlike in *Budzichowski,* Snyder could have received treatment at the hospital even if she was not an employee. Because Snyder's injury arose from a relationship separate and distinct from that of employer-employee and implicated different duties than an employer's duties to its employees, the Workmen's Compensation Act is inapplicable.

2. The opinion authored by Justice Roberts holds the majority of the Court's votes with Justices O'Brien, Larsen and Flaherty joining. Justice Nix filed a concurring opinion. Justices Kauffman and Wilkinson did not participate.

*See Tatrai,* 497 Pa. at 255–7, 439 A.2d at 1166–67. The hospital dealt with Snyder in the dual capacities of employer and medical provider. Thus, Snyder may sue the hospital and Nurse Galozzo for negligent treatment.

The lower courts have stated that this Court has retreated from applying traditional dual capacity analysis. *See, e.g., Callender v. Goodyear Tire and Rubber Co.,* 387 Pa.Super. 283, 291–95, 564 A.2d 180, 185–87 (1989), *appeal denied,* 525 Pa. 593, 575 A.2d 560 (1990). The cases where we did not apply the doctrine, however, are distinguishable from *Tatrai.* In *Heath v. Church's Fried Chicken, Inc.,* 519 Pa. 274, 275–76, 546 A.2d 1120 (1988), for example, an employee was injured at work while operating a saw manufactured by the employer. The employee claimed that the employer was liable for negligence under the dual capacity doctrine since it had independent duties as a product manufacturer. We held that worker's compensation benefits were the employee's exclusive remedy because the injury occurred while he was performing a work-related task. *Id.* at 276–77, 546 A.2d at 1121.

This Court's holding in *Heath* and other cases [3] that the dual capacity doctrine does not apply where an employee is injured while working is consistent with the analysis in *Tatrai.* When an employee is working, he is dealing with his employer solely within an employer-employee relationship. If this were not true, an employee could sue his employer for a slip and fall injury at work, for example, and claim that the employer had an independent duty as a possessor of land. This result would render the Workmen's Compensation Act meaningless. The dual capacity doctrine applies where employees deal with their employers outside of their employment. Only then are the parties in a relationship other than employer-employee and different duties apply.

Appellees argue that Snyder's remedy lies exclusively under the Workmen's Compensation Act because the negligent treat-

---

3. *See, e.g., Lewis v. School Dist. of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988)(dual capacity doctrine did not apply where employee was injured while working).

ment was related to her contraction of tuberculosis which was a work-related injury. *See Workmen's Compensation Appeal Bd. v. Ira Berger & Sons,* 470 Pa. 239, 368 A.2d 282 (1977)(injuries resulting from the negligent treatment of a work-related injury are compensable under the Act because they are causally related). Snyder's contraction of tuberculosis was a work-related injury and her exclusive remedy for that injury was worker's compensation benefits. Her subsequent adrenal gland failure was the result of malpractice. If Snyder had sought treatment of her tuberculosis from a third party, she could recover for malpractice. The hospital or its insurer would have been entitled to subrogation for any benefits paid under the Act for negligent treatment. *See Powell v. Sacred Heart Hospital,* 99 Pa. Commw. 575, 582, 514 A.2d 241, 245 (1986). Instead, Snyder sought treatment for her tuberculosis at the hospital where she worked. The hospital is similarly responsible for malpractice under the dual capacity doctrine. Snyder should be able to recover in tort and the hospital would be credited for any benefits paid under the Act for its negligent treatment.

Finally, the fact that Snyder received medical care under an employee health program does not dictate a different result. If it did, employers providing medical care could shield themselves from tort liability by establishing such programs. The record establishes that the hospital tested, monitored and treated members of the public for tuberculosis. Snyder received the same care as other patients and should be afforded the same remedies for negligence. Thus, the Superior Court's decision should be reversed and this case should be remanded to the Superior Court to decide the remaining issues raised by Appellees on appeal.

CAPPY and NEWMAN, JJ., join in this opinion in support of reversal.