Gerald KINCEL and Lisa Kincel, Husband and Wife

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, and Dick Corporation

Appeal of: Commonwealth of Pennsylvania, Department of Transportation.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.

Decided Feb. 9, 2005.

Michael A. Giannetta, Scranton, for appellant.

Neil T. O'Donnell, Wilkes–Barre, for appellees, Gerald and Lisa Kincel.

James F. Lynn, Philadelphia, for appellee, Dick Corp.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), appeals from an order of the Court of Common Pleas of Luzerne County (trial court) denying its motion for summary judgment. This case presents an issue of first impression: whether an employee of a Commonwealth agency, injured in the course of his employment, can collect workers' compensation benefits and also maintain a suit against a different Commonwealth agency for his injuries. The trial court determined that such an action is permissible. We reverse.

On July 18, 2000, Appellee Gerald Kincel (Kincel), a Pennsylvania State Trooper, was investigating the scene of a motor vehicle accident on Interstate Route 81 in Luzerne County, Pennsylvania. As Kincel lifted a traffic sign that was lying on the roadside, part of the roadway collapsed and the officer fell into a hole approximately nine feet deep. Kincel sustained injuries to his left knee, right ribs and left wrist. He was out of work for six weeks and returned to light-duty work for eight weeks. Kincel received workers' compensation benefits and benefits under the act commonly referred to as the Heart and Lung Act.[1]

Further background to the incident is as follows. In 1998, Appellee Dick Corporation contracted with PennDOT to perform road work in the area where Kincel was injured. At this point in the litigation, there is apparently no dispute that Dick Corporation was responsible for the formation of the hole and that PennDOT was

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638. Kincel received $2,309.29 in medical benefits, $4,102.42 in disability benefits and $1,897.58 in Heart and Lung Act benefits.

aware of the dangerous condition at least eight weeks prior to Kincel's accident.[2]

Kincel filed a civil complaint against PennDOT and Dick Corporation in April 2002. His wife, Lisa Kincel, joined in his action with a claim for loss of consortium. In its answer, Dick Corporation asserted a crossclaim against PennDOT seeking indemnification and/or contribution in the event that it was found liable in whole or in part for Kincel's injuries. PennDOT filed a motion for summary judgment arguing, *inter alia*, that Kincel's claim and Dick Corporation's crossclaim were barred by the exclusivity provisions of Section 303 of the Workers' Compensation Act (Act).[3] CompServices, Inc., the administrator of the Commonwealth of Pennsylvania's workers' compensation program, has also asserted a lien in the amount of $8,309.29 against any recovery by Kincel on his third-party claims. Reproduced Record at 35 (R.R. ____).[4]

The trial court denied PennDOT's summary judgment motion, reasoning that each of the Commonwealth's governmental agencies is an employer independent of the Commonwealth itself and that PennDOT is neither Kincel's employer nor his statutory employer.[5] PennDOT petitioned the trial court pursuant to Pa.R.A.P. 1311(b) to amend its order to certify a controlling question of law for interlocutory appeal.[6]

2. During discovery, representatives of Dick Corporation acknowledged that the hole was formed by erosion or subsidence of a drainage inlet that had not been permanently capped, as required under the construction contract. PennDOT produced a photograph taken from its video log of Interstate 81 reflecting that the problem existed at least six weeks prior to Kincel's injuries. There is also evidence of record that a PennDOT maintenance crew discovered the hole on May 3, 2000, more than two months prior to the incident.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 481. Section 303 provides as follows:

(a) *The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife*, parents, dependents, next of kin *or anyone otherwise entitled to damages in any action at law* or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action. 77 P.S. § 481 (emphasis added).

4. CompServices, Inc.'s claimed subrogation interest represented the total amount of workers' compensation and Heart and Lung Act benefits paid to Kincel. *See supra* note 1.

5. *See infra* note 10 for explanation of "statutory employer."

6. Pa. R.A.P. 1311(b) provides in relevant part that

An application for an amendment of an interlocutory order to set forth expressly the statement specified in 42 Pa.C.S. § 702(b) ("such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter") shall be filed with the lower court or other government unit within 30 days after the entry of such interlocutory order and permission to appeal may be sought within 30 days after entry of the order as amended.

The trial court denied PennDOT's petition by order dated June 15, 2004. PennDOT petitioned this Court for review and on July 23, 2004, we granted the petition. The matter is now ready for disposition.[7]

Section 303(a) of the Act bars an employee from bringing a suit at common law against his employer for injuries sustained in furtherance of the employer's business; it makes benefits under the Act the sole and exclusive means for an individual to recover for such injuries. *Sutmire v. Andrews*, 108 Pa.Cmwlth. 90, 529 A.2d 68, 70 (1987). Section 303(b) preserves the common law right of action by the employee against a third-party tortfeasor but generally immunizes the employer from liability to the third party for contribution or indemnification. *Id.*[8] The term "employer" as used in the Act, is "synonymous with master, and ... include[s] ... the Commonwealth, and all governmental agencies

created by it." Section 103 of the Act, 77 P.S. § 21.

The trial court's analysis focused on the relationship, or lack thereof, between Kincel and PennDOT. The court first looked to the statutory definition of "employer" in the Act, which, as stated above, includes "the Commonwealth and all governmental agencies created by it." *Id.* In the trial court's view, Section 103 means that each Commonwealth agency, such as PennDOT and the Pennsylvania State Police, is a separate employer, independent of the Commonwealth itself. From this premise, the trial court reasoned that none of the usual criteria were present to establish an employment relationship between Kincel and PennDOT.[9] Accordingly, the trial court determined that PennDOT was not entitled to the immunity generally extended to a "statutory employer." [10]

Where the "lower court" refuses to amend its order to include the prescribed statement, a petition for review of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. Pa. R.A.P. 1311, Note. If the petition for review is granted in such a case, the effect is the same as if a petition for permission to appeal had been filed and granted. *Id.*

7. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001). Summary judgment is proper only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law. *Id.*

8. The "third party" in this case, Dick Corporation, has adopted Kincel's brief in lieu of filing its own brief.

9. These criteria include (1) the right to select the employee, (2) the right and power to re-

move the employee, (3) the power to direct the manner of performance and (4) the potential power to control the employee. *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare)*, 141 Pa.Cmwlth. 103, 595 A.2d 213, 216 (1991).

10. Sections 302(a) and 302(b) of the Act, 77 P.S. §§ 461 and 462, confer "statutory employer" status on certain entities for workers' compensation purposes; most commonly, it is conferred on a general contractor when a subcontractor fails to secure insurance. *Gann v. Workers' Compensation Appeal Board (MBS Management/Wellington East Development)*, 792 A.2d 701, 704 (Pa.Cmwlth.2002). An entity is deemed a statutory employer when the following five elements are met: (1) the entity is under contract with an owner or one in position of an owner; (2) the entity occupies or is in control of the premises; (3) the entity entered into a subcontract; (4) the entity entrusted a part of its regular business to the subcontractor; and (5) the injured party is an employee of such subcontractor. *Id.* at 705 (citing *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930)). Section 203 of the Act, 77 P.S. § 52, places the statutory employer in the same position as the "con-

■ The trial court's analysis is flawed. While it may be true that Kincel is not assigned to PennDOT, the real issue is whether Kincel is an employee of the Commonwealth. The answer to this question lies first in certain fundamental principles of our Commonwealth government. The organization and management of the Commonwealth's executive branch is governed generally by those provisions of the Pennsylvania Constitution dealing with the "Executive Department"[11] and "Public Officers;"[12] by the Administrative Codes of 1923[13] and 1929[14] (Administrative Code); and by other portions of Title 71 of the Pennsylvania Statutes relating to state government. For example, Section 201 of the Administrative Code states that

> [t]he executive and administrative work of this Commonwealth shall be performed by the Executive Department, consisting of the Governor, Lieutenant Governor, Secretary of the Commonwealth, Attorney General, Auditor General, State Treasurer, and Secretary of Education; by the Executive Board, *and the Pennsylvania State Police.*

71 P.S. § 61 (emphasis added). The Commissioner of the State Police is nominated and appointed by the Governor upon approval by a majority of the Senate. Section 207.1(d)(1) of the Administrative Code, 71 P.S. § 67.1(d)(1). The various members of the State Police Force are appointed by the Commissioner and receive such compensation as shall be fixed by the Commissioner, with the approval of the Governor. Section 205(c) of the Administrative Code, 71 P.S. § 65(c).[15] The Commonwealth has organized itself into branches of government but that does not mean that each branch and each department is a separate legal person.[16]

PennDOT offered uncontroverted evidence that Kincel is an employee of the Commonwealth. Linda M. Bonney, Director of the Bureau of Human Resources for the Pennsylvania State Police, submitted an affidavit stating *inter alia* that (1) all State Troopers are paid by the Commonwealth and receive a paycheck drawn from the State Treasury, signed by the State Treasurer; (2) all State Troopers receive a Commonwealth of Pennsylvania Employee Pay Statement; (3) the Commonwealth provides medical benefits and life insurance for State Troopers and pays their employment taxes; (4) a pension from the State Employee Retirement System is provided to all State Troopers; (5) workers' compensation coverage and Heart and Lung Act disability benefits are provided to State Troopers by the Com-

tractual" or "common law" employer of the injured worker for tort liability purposes, effectively immunizing the statutory employer from such liability.

**11.** Pa. Const. art. IV (The Executive). Section 1 of Article IV creates an Executive Department consisting of "a Governor, Lieutenant Governor, Attorney General, Auditor General, State Treasurer, and Superintendent of Public Instruction *and such other officers as the General Assembly may from time to time prescribe.*" (emphasis added).

**12.** Pa. Const. art. VI (Public Officers).

**13.** Act of June 7, 1923, P.L. 498, *as amended,* 71 P.S. §§ 1–32.

**14.** Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 51–732.

**15.** The powers and duties of the Commissioner and the State Police Force are further enumerated in Sections 710 through 712 of the Administrative Code, 71 P.S. §§ 250–252.

**16.** Similarly, a corporation may organize itself into divisions and companies; each division, however, remains part of the corporation. A division is not a legal person separate from the corporation.

monwealth;[17] (6) State Troopers work under a collective bargaining agreement between their union and the Commonwealth of Pennsylvania.[18] R.R. 36–37. Ms. Bonney also noted that "the Pennsylvania State Police does not have its own funding source, and all of its funding as a state agency, comes from the Commonwealth of Pennsylvania." R.R. 37. In consideration of the evidence offered by PennDOT, and the fundamental principles of Commonwealth government enumerated above, it is beyond peradventure that all State Troopers, including Kincel, are employees of the Commonwealth who ultimately serve at the behest of the Governor.

Tellingly, Kincel offered no evidence to rebut the fact that he is an employee of the Commonwealth. Instead, Kincel argues that our Supreme Court's decision in *Tork–Hiis v. Commonwealth*, 558 Pa. 170, 735 A.2d 1256 (1999), is controlling here. We disagree. In *Tork–Hiis*, decedents died while cross-country skiing in a state park. Their survivors (appellees) commenced wrongful death and survivor actions against the Commonwealth and two "John Doe" defendants. The Commonwealth preliminarily objected on the grounds that it was statutorily immune, that appellees had failed to name a "Commonwealth party" for which immunity had been waived, and that the statute of limitations precluded amendment of the complaint. The trial court determined that the Commonwealth and a Commonwealth agency are separate and distinct entities

and, thus, appellees could not amend their complaint after the statute of limitations had run because addition of a new party would be prejudicial to that party. This Court reversed, finding that the addition of an agency was a mere correction of the caption and was permissible, even after the statute of limitations had expired, so long as the same assets were exposed to judgment before and after the amendment. *Tork–Hiis v. Commonwealth*, 714 A.2d 518 (Pa.Cmwlth.1998), *reversed*, 558 Pa. 170, 735 A.2d 1256 (1999).

The Pennsylvania Supreme Court reversed our decision, holding that for purposes of tort litigation "[t]he [C]ommonwealth and its agencies are distinct legal entities; the substitution of one for the other amounts to the addition of a new party and is impermissible after the statute of limitations expires." *Tork–Hiis*, 558 Pa. at 177, 735 A.2d at 1259. The Court further explained that

the plaintiff seeks to name a new defendant, one whose assets, although ultimately arising from the same tax base, are not congruent with those of the [C]ommonwealth, and one that was not a party to the proceedings. The department asset pool consists of funds specifically allocated for the department's use, while the asset pool of the [C]ommonwealth would necessarily encompass the specifically allocated funds of all departments. While the amount of compensation sought is the same regardless of the

---

**17.** Section 1(a) of the Heart and Lung Act provides, in pertinent part, that "[a]ny member of the State Police Force ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid *by the Commonwealth of Pennsylvania.*" 53 P.S. § 637(a) (emphasis added).

**18.** The act commonly known as Act 111, Act of June 24, 1968, P.L. 237, No. 111, *as*

*amended*, 43 P.S. §§ 217.1–217.27, governs collective bargaining between police officers and their public employers. We note that all references in Act 111 to an employer are to a political subdivision of the Commonwealth or the Commonwealth itself. Nowhere does Act 111 suggest that State Troopers are employed by the Pennsylvania State Police rather than the Commonwealth.

source (the [C]ommonwealth or its agency), the assets of the [C]ommonwealth are not the same as the assets of any of its agencies.

*Id.* at 176–177, 735 A.2d at 1259. Kincel seizes upon the above language as support for his argument that, as an employee of the Pennsylvania State Police, he is entitled to bring a tort action against PennDOT, which is a distinct, separately funded entity.

The flaw in Kincel's argument lies in the fundamental distinction between two different statutory schemes, one relating to the waiver of sovereign immunity and the other relating to compensation of injured workers. The legislature has, in certain limited instances, waived sovereign immunity as a bar to actions against "Commonwealth parties." 42 Pa.C.S. § 8522(a).[19] The Commonwealth itself remains absolutely immune from suits brought against it in its own courts and in federal courts, as guaranteed by the Eleventh Amendment to the United States Constitution. 42 Pa.C.S. § 8521.[20] In light of the foregoing principles, it is not surprising that our Supreme Court in *Tork–Hiis* distinguished the Commonwealth from its various agencies; one is always immune while the other is not if immunity has been specifically

waived. When viewed in its proper context, the Court's *dicta* regarding the funding of the Commonwealth's departments makes sense. In sum, what may be gleaned from *Tork–Hiis* is that, for the exceptional negligence claim, the legislature has placed the burden on the plaintiff to identify the state agency that is the alleged tortfeasor. Simply naming the "Commonwealth" as a defendant is inadequate in terms of providing notice to the proper parties for investigative purposes.

■ That the Commonwealth and its various agencies are distinct entities for purposes of waiver of sovereign immunity does not mean that they are distinct in other contexts. Such is the case for workers' compensation. The definition of "employer" in the Act does not distinguish the various agencies of the Commonwealth from the Commonwealth itself. Rather, the Act defines "employer" as "the Commonwealth, and all governmental agencies created by it." 77 P.S. § 21. The legislature could have provided that each agency is a separate employer for purposes of the Act, but it did not. Because the Commonwealth is a single legal entity, we believe it would take very clear language to effect the result that each agency is a separate

19. A "Commonwealth party" is defined as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. A Commonwealth agency includes any "executive agency," which is defined as "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government, but the term does not include any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency." 42 Pa.C.S. § 102.

20. It is axiomatic that, for purposes of the Eleventh Amendment, each state is a single sovereign entity in our federal system. *Zelinski v. Pennsylvania State Police,* 282

F.Supp.2d 251, 263 (M.D.Pa.2003), *aff'd in part, vacated in part on other grounds,* 108 Fed.Appx. 700, 2004 WL 1799234 (3d Cir. 2004) (not precedential). Moreover, the Eleventh Amendment's bar extends to suits against departments or agencies of the state. *Id.* at 264 (Pennsylvania State Police); *see also Lavia v. Pennsylvania, Department of Corrections,* 224 F.3d 190, 195 (3d Cir.2000) (Department of Corrections); *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 977 (E.D.Pa.1977) (Department of Public Welfare). We have little doubt that the *Tork–Hiis* court did not intend to abrogate the fundamental precept of Eleventh Amendment jurisprudence that a state and its various instrumentalities are a single legal entity.

employer.[21] Furthermore, the exclusivity provisions of Section 303 of the Act are designed to insulate an employer from liability while granting an employee the right to collect benefits without proving fault. Adopting Kincel's position would destroy this careful balance. Any damages recovered by Kincel in his tort action against PennDOT would be paid from the State Treasury, which, as PennDOT demonstrated, is also the ultimate source of funding for Kincel's workers' compensation benefits.

Kincel's theory of liability has been asserted unsuccessfully against municipalities in Pennsylvania. For example, in *Berger v. U.G.I. Corporation*, 285 Pa.Super. 374, 427 A.2d 1161 (1981), William Berger, a firefighter employed by the City of Allentown (city), was killed by a gas explosion while fighting a fire. Berger's widow brought wrongful death and survivor actions against UGI. UGI subsequently joined the city as an additional defendant, alleging that the city's water and sewer department was also negligent. The city answered that it could not be joined as an additional defendant pursuant to Section 303(b) of the Act since Berger had been killed in the course of his employment. The trial court granted the city's motion for judgment on the pleadings.

On appeal to the Superior Court, UGI argued that the city was not immune from suit by a third party under the Act because the injured employee worked in a department which was separate and distinct from the allegedly negligent department. The Court rejected UGI's theory, reasoning as follows:

> *Other jurisdictions have refused to distinguish one governmental function from another for the purpose of their workmen's compensation exclusivity provisions.* In *Wright v. Moore*, 380 So.2d 172 (La.App.1979), *cert. denied*, 382 So.2d 164 (La.,1980) the state was named as a defendant on the basis that the transportation department was a separate entity from the health department which employed the injured nurse. In affirming a grant of summary judgment for the state, the court said:

>> We cannot find in this instance that the State of Louisiana occupies a dual capacity,[22] that of employer and tort-

---

**21.** We note that the Supreme Court of New Mexico has addressed a case remarkably similar to the one *sub judice*. In *Singhas v. New Mexico State Highway Department*, 124 N.M. 42, 946 P.2d 645 (N.M.1997), two public defenders were involved in an automobile accident while traveling to an employment-related meeting. The plaintiffs initiated a negligence action against the state highway department even though they had received disability and/or death benefits under New Mexico's workers' compensation statute. Like Kincel, plaintiffs argued that the highway and public defender departments were separate legal entities. The Supreme Court of New Mexico disagreed and held "as a matter of law, the State is the employer." *Id.* at 647. Key to the court's analysis was the statutory definition of "employer," which is substantially similar to Pennsylvania's: "for purposes of this section, 'state' or 'state agency' means the State of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." *Id.* (citing N.M. Stat. Ann. § 52–1–3(D) (1987)). The *Singhas* court reasoned that because the legislature did not attempt to distinguish the various state agencies and departments from the State itself, it intended that "the State of New Mexico be considered the employer of all employees in its various 'branches, agencies, departments, boards, instrumentalities or institutions.' " *Id.* (citation omitted). The court's analysis is in accord with our own, and we cite it here as persuasive authority.

**22.** Under the so-called "dual capacity" doctrine, an employer who is normally shielded from tort liability by the exclusive remedy of the Act may become liable in tort to his employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those

feasor. Whether maintaining the traffic signal alleged by the plaintiff to have played a causative role in the accident, or whether providing nurses for health care, the status of the State in this lawsuit is that of employer only. 380 So.2d at 174 (citations omitted).

*Berger,* 427 A.2d at 1163 (citing cases from numerous jurisdictions in accord) (emphasis added). There is no principled distinction to be made between a municipality and the Commonwealth for purposes of our analysis, and we decline to distinguish one governmental function (police) from another (highway safety) for purposes of the exclusivity provisions of the Act.

In sum, we reject the trial court's conclusion that the Pennsylvania State Police and PennDOT are separate enterprises for purposes of Section 303 of the Act. As a matter of law, the Commonwealth is the employer of all of the individuals who work for its myriad agencies, departments and other instrumentalities, including the Pennsylvania State Police and PennDOT. To allow Kincel and Dick Corporation to proceed with their claims against the Commonwealth through PennDOT would upset the delicate balance struck by the Workers' Compensation Act between insulating employers from tort liability while guaranteeing no-fault benefits to employees injured on the job. Thus, Kincel's action against PennDOT is barred under Section 303(a) of the Act. Dick Corporation's cross-claim against PennDOT for contribution and/or indemnification is likewise barred under Section 303(b).[23] For these reasons, PennDOT was entitled to judgment as a matter of law and the trial court erred in denying its motion for summary judgment. Accordingly, we reverse the order of the trial court and remand this matter for entry of judgment in favor of PennDOT on Kincel's claim and Dick Corporation's crossclaim.

imposed on him as employer. *Pavlek v. Forbes Steel and Wire Corporation,* 358 Pa.Super. 316, 517 A.2d 564, 565 (1986). The dual capacity doctrine does not abrogate the exclusivity provision of the Act. *Taynton v. Dersham,* 358 Pa.Super. 178, 516 A.2d 1241, 1245 (1986). Instead, the doctrine construes the employer in his second capacity to be someone other than the employer for purposes of the Act. *Id.* The duty of care owed by the employer in its second capacity is viewed as a duty external to the employer-employee relationship. *Id.* Kincel does not expressly raise a "dual capacity" argument so the doctrine is technically not applicable here. In any event, in Pennsylvania the dual capacity exception does not apply where the injury occurs while the employee is actually engaged in the performance of his or her job because the exclusivity provision prohibits suits by employees against their employers for injuries sustained in the course of their employment. *See, e.g., Snyder v. Pocono Medical Center,* 547 Pa. 415, 690 A.2d 1152 (1997) (opinion in support of affirmance) (hospital employee exposed to tuberculosis in course of her employment barred from suing her employer for negligent treatment); *Heath v. Church's Fried Chicken,*

*Inc.,* 519 Pa. 274, 546 A.2d 1120 (1988) (barring employee's products liability claim against employer who was also manufacturer of equipment on which employee was injured); *Coleman v. City of Philadelphia,* 131 Pa.Cmwlth. 605, 571 A.2d 528 (1990) (city trash collector barred from recovering from city for injuries sustained when city street collapsed while he was performing his job duties); *Sutmire v. Andrews,* 108 Pa.Cmwlth. 90, 529 A.2d 68 (1987) (third-party tortfeasor's action against municipality barred where plaintiff police officer was injured in collision with third-party tortfeasor's automobile and collected workers' compensation benefits). .

23. Section 303(b) contains an exception to the exclusivity provision: an employer may be liable to a third party for damages, contribution or indemnity if such liability is "expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." 77 P.S. § 481(b). There was no such written agreement in this case between Dick Corporation and the Commonwealth.

## ORDER

AND NOW, this 9th day of February, 2005, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter dated May 6, 2004, is hereby REVERSED and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.